No. 52,295

STATE OF KANSAS, *Appellee,* v. DANNY LEE FOSTER, *Appellant.*

(623 P.2d 1360)

Opinion filed February 28, 1981.

*Michael Lerner,* of Barnett & Lerner, Chartered, of Kansas City, argued the cause, and *Stephen G. Mirakian,* of the same firm, was with him on the brief for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is a direct appeal by Danny Foster, following his conviction by a jury in Wyandotte District Court of premeditated murder of a six-month-old child, Courtney Phipps, in violation of K.S.A. 21-3401. Foster was sentenced to life imprisonment. He raises three issues on appeal: whether the trial court erred in admitting into evidence the factual background of Foster's prior conviction for endangering a child; whether the court erred in denying Foster's motion for a directed verdict of acquittal; and whether the court erred in allowing photographs of the victim to be introduced in evidence.

Foster was living in Kansas City, Kansas, with Laura Phipps and her two children, Taryn, who was four years old, and Court-

ney, a six-month-old baby, in January, 1980. Laura Phipps worked at a steel company; Foster was not employed. While Mrs. Phipps was at work, Foster took care of little Courtney. Taryn stayed in a day-care center.

Foster drove Mrs. Phipps to work on January 17, 1980; en route they left Taryn at the day-care center. Mrs. Phipps testified that there were no bruises on the baby's head or face at that time and that she did not see anyone drop the baby or injure him in any way. Foster was in charge of the baby all day. Shortly after five o'clock that evening, Foster brought the baby to the emergency room at Bethany Hospital. He told employees that Courtney had choked on some food; later, when asked about the child's bruises, he said that Courtney had slipped through his stroller. Courtney was examined in the emergency room and was seen by several physicians at Bethany. He had second and third degree burns on his chest and stomach, extending from his neck to his navel; the burns, however, were not found to have any connection with the child's more serious injuries. There were bruises behind the child's left ear, on his left cheek, on the back of his head, and on his back. He was unconscious, comatose, and having difficulty breathing. No food particles of any kind were found in his throat. The child had no reflexes and did not respond to verbal or painful stimuli. An examination of the child's eyes disclosed swelling and bleeding in the back part of the eyes; this in turn indicated severe swelling about the brain. Courtney was transferred to the Kansas University Medical Center. X-rays disclosed no fractures of the skull. A computer brain scan showed a very large blood clot over the whole left side of the brain. A neurosurgeon performed a craniotomy, removed the blood clot, and relieved the pressure on the brain. Courtney never regained consciousness, and died on January 24, 1980. An autopsy disclosed a large bruise to the right side of the head, much excess fluid in the brain, hemorrhage to the midbrain, and a large blood clot which permitted blood to flow into the brain but prevented it from flowing out. The medical witnesses expressed the opinion that brain damage was the cause of death; this in turn was caused by trauma, violent shaking of the child or blows to its head.

As indicated above, the trial court received evidence of Foster's prior conviction for endangering a child, and the court permitted the State to call witnesses to describe the occurrence which

formed a basis for that conviction. Highly summarized, that evidence is as follows: In 1976, Foster was living with the mother of a seven-month-old child; Foster was entrusted with care of the child while the mother was absent from the home. The child was healthy when she last saw it. Foster came to Bethany Hospital with the child; it was bruised about the head and neck; it was comatose; hemorrhages in both eyes were noted, indicative of brain damage; Foster denied knowledge of how the injury occurred, except that he admitted shaking the child until it was limp and unconscious; medical testimony indicated that the brain damage was caused by trauma, violently shaking or striking the child; the child survived, but it is most severely brain damaged. In the case now before us, the trial judge instructed the jury that evidence of the 1976 occurrence might be considered "solely for the purpose of proving the defendant's intent, identity, absence of mistake or accident."

As his first point on appeal, Foster contends that intent, identity, absence of mistake or accident were not substantially in issue, and the evidence was therefore inadmissible; further, he contends that the evidence should not have been admitted since its prejudice to the accused far outweighed its probative value. The evidence was admitted by the trial court under K.S.A. 60-455.

The basic principles governing the trial courts in determining whether or not to admit evidence under K.S.A. 60-455 were set forth and discussed at length by Justice Prager in *State v. Bly,* 215 Kan. 168, 172-179, 523 P.2d 397 (1974). What was said in *Bly* is still controlling. To be admissible under 60-455, evidence of a prior conviction or civil wrong must be relevant to prove one or more of the factors enumerated in the statute. Included in that list are intent, identity, and absence of mistake or accident. The factor which forms the basis for the admission of the evidence must be substantially in issue; it must not be obvious from the act itself. These examples are given: "Where an armed robber extracts money from a store owner at gunpoint, his felonious intent is obvious from the act itself and is not really in dispute. . . . Likewise, where a defendant admits that he committed the act and his presence at the scene of the crime is not disputed, a trial court should not admit other crimes evidence for the purpose of proving identity." (215 Kan. at 176.) Other crimes evidence must be excluded because of its inherent prejudice unless the factor is a real issue in the lawsuit.

There was evidence in this case that the bruises around the child's head and neck could have been caused by the child slipping from his stroller. This evidence came in through the testimony of Mrs. Phipps, and by way of the statement made by Foster. The physical evidence and the medical testimony, on the other hand, suggest that the bruises had a more violent cause. When Foster delivered the child to the hospital, he attributed the child's breathing difficulties and its then present condition to the child's having choked on baby food. Physical examination of the child and medical opinion did not support that story. Absence of mistake or accident was obviously one of the disputed issues, and we conclude that the evidence was admissible for the purpose of showing that the child's condition was not the result of accident.

Malice, intent, deliberation and premeditation are all elements which must be proved in order to establish murder in the first degree. Defendant's plea of not guilty puts every element of the charge against him in issue. The existence of charge and plea, alone, however, does not justify the receipt of other crimes evidence under K.S.A. 60-455. *State v. Brooks,* 222 Kan. 432, 434, 565 P.2d 241 (1977). The question is, was there a *substantial* issue under the evidence? We conclude that there was. The evidence was largely circumstantial; there were no eyewitnesses available to testify; no witness saw the defendant shake or strike the child violently; no one observed his demeanor, overheard the conversation, or was available to tell the court and jury what occurred. That the defendant had previously abused a child, with strikingly similar result, was most indicative of his intent in this instance. We conclude that there was a real issue on the question of intent, and the evidence was properly admitted on that issue.

Finally, was identity in issue? According to the testimony of Mrs. Phipps, the defendant was taking care of Courtney, and she was at work, on the day the child sustained injury. No one else was shown to have seen the child during the 24-hour period prior to its arrival at the hospital except the defendant—*and Mrs. Phipps. Either one* could have caused the injury. While defendant admitted that he alone cared for the child during the day before he took the child to the hospital, he denied injuring the child in any way. Mrs. Phipps said the child was healthy that morning. Foster admitted no act of violence toward the child, and no

witness saw him commit such an act. The underlying facts of the 1976 offense were remarkably similar to this one. We conclude that identity was substantially at issue, and that the trial court did not abuse its discretion in admitting the evidence on the questions of identity, intent, or absence of mistake or accident.

We turn next to defendant's contention that the trial court erred in overruling his motion for a directed verdict of acquittal. The only basis asserted for the motion for directed verdict of acquittal is the claim that the State failed to establish the corpus delicti.

We recently discussed the corpus delicti in homicide cases in *State v. Henderson,* 226 Kan. 726, 603 P.2d 613 (1979). We said:

"In homicide cases the corpus delicti is established by the proof of two facts: that one person was killed, and that another person killed him. . . . The corpus delicti may be proved by direct testimony, by indirect or circumstantial evidence, or by a combination of both." 226 Kan. at 731.

Defendant places primary reliance upon *State v. Doyle,* 201 Kan. 469, 441 P.2d 846 (1968), where we indicated that the facts must not only be consistent with the guilt of the defendant, but must be inconsistent with any other hypothesis, and that the proof must exclude death by accident or suicide. As we explained in *Henderson,* however, the suggestion in *Doyle* that the possibility of death by suicide, or natural causes (such as accident) has not been followed in our later cases, and *Doyle* has frequently been distinguished on the basis of the facts. See *Henderson,* 226 Kan. at 732-733, and cases cited. The defendant in *Doyle* was not shown to have been at the scene of the alleged crime. The deceased was found in a remote area, seated in the driver's seat of his car, with a single bullet wound in his right temple and a pistol lying beside his right hand on the front seat of the car. There was no evidence that the accused was ever there. Here, there was evidence that the defendant had the sole care of the child during the eight hours immediately prior to the time the injuries were discovered at Bethany Hospital. Here, the deceased sustained massive intracranial injury at a time when the defendant was present. The age of the deceased child rules out suicide. There was a wealth of medical testimony, the sum and substance of which was that although the visible bruises could have been caused by natural causes such as falling, the injury to the brain requires a great deal of force, and the experts were of the opinion that this was caused by external blows or by shaking the child.

While it is possible that the child could have died from accidental injury, such a possibility was shown to be extremely remote. This issue was argued forcibly and articulately to the jury, but the jury resolved the issue adversely to the defendant. On the basis of the physical and medical evidence, it determined that Courtney Phipps' death was not accidental, but the result of intentional, willful, premeditated acts of the defendant. We conclude that the evidence was sufficient to go to the jury on those issues; the weight of the evidence was, of course, for the jury. We find no error.

Finally, Foster contends that the trial court erred in admitting, over his objection, photographs of the victim. The photographs admitted as exhibits were all external views of the deceased, all taken prior to the autopsy. They were used to show the multiple bruises on the child's body to the jury, and they were referred to repeatedly by the several physicians during their testimony. The photographs were relevant to explain the medical testimony and the cause of death, and even though they were unpleasant to view, they were admissible. *State v. White & Stewart,* 225 Kan. 87, 91, 587 P.2d 1259 (1978); *State v. Childers,* 222 Kan. 32, 44, 563 P.2d 999 (1977); and *State v. Henson,* 221 Kan. 635, 646, 562 P.2d 51 (1977). The trial judge did not abuse his discretion by admitting these exhibits.

The judgment is affirmed.