No. 54,100

STATE OF KANSAS, *Appellee*, v. DAVID T. GREEN, *Appellant.*

(652 P.2d 697)

Opinion filed October 22, 1982.

*Carl E. Cornwell,* of Kansas City, argued the cause and was on the brief for the appellant.

*John J. McNally,* chief deputy district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is a criminal action in which David T. Green (defendant-appellant) appeals a jury verdict finding him guilty of first-degree murder (K.S.A. 21-3401). Trial errors concerning the admission of evidence are asserted on appeal for review.

On May 12, 1981, around 1:40 a.m., police responded to a request for an ambulance at the home of the victim, Agnes Green, in Kansas City, Kansas. Upon arrival, the officers were met by the appellant, the victim's husband, who directed them to the upstairs bathroom where the victim was found dead in the bathtub. It was discovered later that the victim had died from loss of blood from two deep wounds to her head and a severe injury to her liver. The murder weapon, found later in a weedy area behind the victim's house, was believed to be a double-bladed ax. A large amount of blood was found on the bed, floor and walls in the victim's bedroom and in the hallway between the bedroom and bathroom.

The defendant, who was separated from his wife, repeatedly related the following story to police at the scene. The victim had called the defendant and told him someone was breaking into the back of her house. He changed out of his pajamas and ran to his wife's house, which was about six blocks away. He first checked the back window where she had said someone was breaking in. Finding no one there, the defendant went around to the front of the house and entered through the front door which he found partially open. The victim was upstairs in her bed with a large wound to the side of her head. Her purse was laying open on the floor with nothing in it. She told the defendant her assailants were downstairs, at which time he left to try to find them. Seeking help, he went to a neighbor's house but was unsuccessful. He returned to find the victim on the floor. She asked the defendant to get water to help her clean up the wounds. He picked her up under the arms, dragged her to the bathtub, and ran water over her head to wash off the blood. He then decided he needed help and called for an ambulance. The defendant offered this testimony in his defense at trial.

At trial the following incriminating evidence was presented. The ax believed used to kill the victim belonged to the defendant's landlord, who had placed it in another tenant's apartment a few days prior to the murder, to be used to chop down a tree. The

tenant, Elmore Norris, testified he had never received the ax and evidence was presented that the defendant had access to Norris' room, often using his refrigerator and stove. About a year prior to the killing an incident occurred where the defendant had thrown a small hatchet at the victim, making it necessary for her to have stitches. The Green's eight-year-old son, who lived with the victim, testified he and his two younger brothers were in bed the night of the murder. He heard his parents arguing, heard his mother scream, and saw his father drag his mother to the bathroom. Evidence of marital discord in the weeks preceding the victim's death was presented, including an incident where the defendant had threatened to send the victim "back to Africa in a pine box." Also, a neighbor testified that the victim was afraid of the defendant. A jury found the defendant guilty of first-degree murder.

Two issues are raised on appeal. First, the appellant contends the trial court erred in admitting into evidence, over objection, shocking and gruesome photographs of the victim's corpse taken prior to the autopsy while the body was lying on a morgue table. The photographs in question, State's exhibits 18 and 19, were in color and showed the wounds to the right and left sides of the victim's head which were presumably made by the ax. The appellant claims these photographs were inflammatory, prejudicial and unnecessary to the State's case, as they were not used to corroborate the testimony of any witness and were not relevant or necessary to the pathologist's testimony as to the cause of death.

Photographs are not rendered inadmissible merely because they are shocking or gruesome, if they are relevant and material to the issues in the case. We have repeatedly held that in a crime of violence which results in death, photographs which serve to illustrate the nature and extent of the wounds inflicted are admissible when they corroborate the testimony of the witnesses or are relevant to the testimony of a pathologist as to the cause of death, even though they may appear gruesome. *State v. Johnson,* 231 Kan. 151, 157, 643 P.2d 146 (1982); *State v. Salem,* 230 Kan. 341, 347, 634 P.2d 1109 (1981); *State v. Foster,* 229 Kan. 362, 367, 623 P.2d 1360 (1981); *State v. Words,* 226 Kan. 59, 61, 596 P.2d 129 (1979); *State v. Gutierrez,* 225 Kan. 393, 590 P.2d 1063 (1979); *State v. McCorgary,* 224 Kan. 677, 681, 585 P.2d 1024 (1978); *State v. Henson,* 221 Kan. 635, 647, 562 P.2d 51 (1977); *State v. Wilson,* 220 Kan. 341, Syl. ¶ 5, 552 P.2d 931 (1976).

The two photographs in question were used by the pathologist who performed the autopsy during his testimony to describe the nature and extent of the decedent's head wounds. The appellant's contention that these photographs were irrelevant and unnecessary to the pathologist's testimony as to the cause of death is without merit. The pathologist testified that the victim died from blood loss within fifteen to twenty minutes after receiving the head wounds, and that either of the blows to the victim's head would have immediately debilitated her, rendering her unconscious and unable to speak. The photographs served to illustrate and corroborate this testimony, which was directly relevant to the defendant's testimony that he had arrived at the victim's house after the wounds had been inflicted, and the victim had told him where her assailants were, moved herself from the bed to the floor, and asked for water to clean her wounds.

We have noted previously that even where the defendant concedes the cause of death, it is incumbent on the prosecution to prove as part of its case in chief all the elements of the crime charged; and photographs to prove the elements, including the fact and manner of death, are relevant and admissible. *State v. Dargatz,* 228 Kan. 322, 329, 614 P.2d 430 (1980); *State v. Campbell,* 210 Kan. 265, 276, 500 P.2d 21 (1972). For the crime charged here it was necessary for the State to prove the defendant committed the crime with premeditation and malice. The photographs were proper to support the pathologist's testimony not only to contradict the defendant's testimony, but also to prove malice and premeditation by the nature and extent of the wounds suffered by the victim. The fact that the body was lying on a bloody morgue slab does not make the photographs prejudicial and render them inadmissible. See, *e.g., State v. Soles,* 224 Kan. 698, 701-02, 585 P.2d 1032 (1978); *State v. Childers,* 222 Kan. 32, 44, 563 P.2d 999 (1977); *State v. Jones,* 218 Kan. 720, 724, 545 P.2d 323 (1976). There was no error in the admission of these photographs.

The appellant next contends that evidence of prior instances of marital discord between himself and his deceased wife was erroneously admitted by the trial court. A pretrial hearing was conducted during which counsel for the defendant objected to the introduction of testimony concerning an incident in May

1980, where the defendant had thrown a hatchet at the victim, for which the defendant was convicted of battery. Also objected to was the admission of evidence of two assault charges pending against the defendant at the time of the murder which had been brought by the victim following altercations with the defendant on April 13, 1981 and April 27, 1981. The trial court allowed testimony concerning these three prior instances under K.S.A. 60-455 to prove identity, knowledge and absence of mistake.

It must first be noted that from the record it is apparent the trial court did not give a limiting instruction, and counsel for the defendant did not request that a limiting instruction be given. Generally, in every case where evidence of other crimes is admissible solely under the authority of K.S.A. 60-455 the trial court should give an instruction limiting the purpose for which the evidence of the similar offenses is to be considered. Under such circumstances the failure of the trial court to give a limiting instruction, regardless of request, is of such a prejudicial nature as to require the granting of a new trial. *State v. Whitehead,* 226 Kan. 719, Syl. ¶ 2, 602 P.2d 1263 (1979).

Where, however, evidence is admissible independent of 60-455, the failure to give a limiting instruction does not constitute reversible error. Recently, in *State v. Crossman,* 229 Kan. 384, 387, 624 P.2d 461 (1981), we held that in cases of crimes involving illicit sexual relations or acts between an adult and a child, evidence of prior acts of similar nature between the same parties is admissible independent of K.S.A. 60-455 where the evidence is not offered for the purpose of proving distinct offenses, but rather to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness as to the act charged. In *Crossman* the defendant claimed the admission of the victim's testimony concerning prior sexual acts between herself and the defendant other than those acts with which the defendant had been charged, constituted reversible error where no limiting instruction had been given. The victim's credibility, which involved questions as to why the victim had tolerated the abuse from her stepfather for so long and why she had never confided in her mother about the matter, was a key issue at trial. Evidence of the entire complex family relationship, which included the prior sexual encounters between the victim and the defendant, was

"highly relevant" to the issue of the victim's credibility, and thus was held to be admissible independent of 60-455.

Numerous decisions by this court have pointed out that where a marital homicide is involved, evidence of a discordant marital relationship, and of the defendant's previous ill treatment of his wife, including his prior threats to kill her, is competent as bearing on the defendant's motive and intent. *State v. Fenton,* 228 Kan. 658, 667-68, 620 P.2d 813 (1980); *State v. Anicker,* 217 Kan. 314, 316, 536 P.2d 1355 (1975); *State v. Patterson,* 200 Kan. 176, Syl. ¶ 2, 434 P.2d 808 (1967). In *State v. Wood,* 230 Kan. 477, 479-80, 638 P.2d 908 (1982), we held such evidence was admissible independent of K.S.A. 60-455, where it was not offered for the purpose of proving the offense charged, but rather to establish the prior violent relationship between the parties and the defendant's prior intent to kill his wife. These and other cases have indicated the high degree of relevancy inherent in such evidence to prove a critical issue in the case. See *State v. Egbert,* 227 Kan. 266, 269, 606 P.2d 1022, *cert. denied* 449 U.S. 965 (1980); *State v. Rupe,* 226 Kan. 474, 477-78, 601 P.2d 675 (1979).

Obviously, the identity of the assailant was a critical issue in the case. The defendant claimed in essence that someone had broken into his wife's house to rob her and inflicted the fatal wounds prior to his arrival on the scene. As pointed out in *Anicker,* under these circumstances evidence of the defendant's prior assaults against his wife was of great probative value on the issue of identity. 217 Kan. at 316. Following the holdings in *Wood* and *Crossman,* we conclude that evidence of a discordant marital relationship, including the defendant's prior acts of violence against his wife and threats to kill her, is admissible independently of K.S.A. 60-455, where the evidence is offered not for the purpose of proving distinct offenses, but rather to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the witnesses as to the act charged. Under these circumstances a limiting instruction is not required.

Returning to the appellant's complaint, he contends the battery conviction was so remote in time as to have no relevance to the murder which occurred almost a year later. On the other hand, the appellant claims the two assault charges occurring the month prior to the murder were so recent that they were inherently

prejudicial, outweighing any probative value, and should have been excluded under K.S.A. 60-445.

Addressing the first part of the appellant's complaint, the fact that the hatchet incident resulting in the battery conviction occurred a year prior to the murder does not necessarily render evidence of that incident so remote as to destroy its relevancy. In holding that the evidence was relevant and admissible where the defendant had threatened to kill his wife ten months prior to the death, the court in *State v. Fenton,* 228 Kan. at 668, stated:

"Whether evidence is too remote to be admissible rests within the sound discretion of the trial court. *State v. Betts,* 214 Kan. 271, Syl. ¶ 2, 519 P.2d 655 (1974). Lapse of time may not be sufficient to deprive evidence of its value, *State v. Demming,* 79 Kan. 526, 528, 100 Pac. 285 (1909), but goes to the weight of the evidence, which is for the jury to determine. See *State v. Betts,* 214 Kan. at 276; 29 Am. Jur. 2d, Evidence § 360, p. 410."

See also *State v. Cross,* 216 Kan. 511, 522, 532 P.2d 1357 (1975); *State v. O'Neal,* 204 Kan. 226, 230, 461 P.2d 801 (1969). In *State v. Anicker,* 217 Kan. at 315-16, testimony that the defendant had assaulted and beaten his deceased wife seven months prior to the homicide was held relevant and admissible on the issues of identity, intent and motivation.

The trial court did not abuse its discretion in allowing testimony concerning the year-old battery conviction where the similarity between the nature of that act and the manner of death rendered it extremely relevant to the issue of identity. We note the trial judge did exclude evidence offered by the State of marital problems which occurred prior to the May 1980 incident as being too remote to be relevant to the issues presented in this trial.

The second part of the appellant's complaint centers upon the claim that under K.S.A. 60-445 the trial court should have excluded evidence of the two assault charges brought in April 1981 as being so recent as to unduly prejudice the defendant's right to a fair trial. K.S.A. 60-445 provides in pertinent part:

"[T]he judge may in his or her discretion exclude evidence if he or she finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered."

As pointed out by this court in *State v. Davis,* 213 Kan. 54, 57, 515 P.2d 802 (1973), although 60-445 refers to the exercise of discretion by the trial court when the evidence relates only to

"surprise," it is a rule of necessity that the trial court may exclude *any* evidence which may unfairly prejudice a jury. See also *State v. Reynolds,* 230 Kan. 532, 536, 639 P.2d 461 (1982). Several cases before this court have involved the admissibility of evidence of marital violence in the weeks immediately preceding a murder, and have held the evidence is not so prejudicial as to outweigh its probative value. For example, in *State v. Wood,* 230 Kan. at 478-80, evidence that two or three weeks before the murder the defendant informed a friend that "he would blow his old lady's head off," and seven hours before the murder the victim told her mother she had been beaten up and was afraid the defendant would kill her, was admissible. In *State v. Rupe,* 226 Kan. at 477-78, evidence that the defendant had been choking the victim with his hands 45 days before her death was admissible. See also *State v. Egbert,* 227 Kan. at 269-70; *State v. Anicker,* 217 Kan. at 315.

K.S.A. 60-445 vests broad discretion in the trial court to balance the probative value of evidence against the prejudicial effect it may have on the jury. We do not believe the evidence presented here was so prejudicial as to outweigh its probative value and deprive the defendant of a fair trial.

The judgment of the lower court is affirmed.

FROMME, J., not participating.