No. 65,228

STATE OF KANSAS, *Appellee*, v. TERRY L. HEDGER, *Appellant*.

(811 P.2d 1170)

Opinion filed May 24, 1991.

*Carl E. Cornwell*, of Kansas City, argued the cause and was on the brief for appellant.

*D. Paul Theroff*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Nick A. Tomasic*, district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, C.J.: Defendant, Terry L. Hedger, appeals from his conviction of one count of murder in the second degree, K.S.A. 21-3402. The victim was defendant's wife, Joanne Hedger, and the defense was that the shooting was an accident or mistake. We affirm.

Defendant does not deny that he fired the shot that killed his wife but contends he did so accidentally or by mistake. Defendant asserts that (1) the trial court erred in admitting evidence of prior violent incidents between defendant and his wife; (2) the trial court erred in admitting into evidence gruesome photographs and a videotape of the victim's body; and (3) the evidence was insufficient to support the verdict. The facts will be set forth in some detail.

Joanne Hedger (Jodie) and Terry L. Hedger were married in LaPlata, Maryland, June 7, 1984. Defendant is an alcoholic and he and Jodie experienced problems prior to and early in their marriage due to defendant's violent nature when he was drinking. In late July 1984 the Hedgers moved to Wisconsin and in August

they moved to Kansas City. During July 1984, law officers were called in connection with four domestic disturbances involving the Hedgers. Three incidents took place in Maryland and one in Wisconsin.

Following the Hedgers' move to Kansas City, defendant sought help for his drinking problems and underwent inpatient alcohol treatment at Baptist Medical Center for 30 days. Thereafter he participated in an after-care program for approximately two and one-half years and actively participated in Alcoholics Anonymous. Two children were born to defendant and Jodie. Defendant was regularly employed in a responsible position as a construction foreman. Jodie was self-employed in her own upholstery shop and was involved in numerous other activities. Defendant, an avid gun collector and hunter, maintained his own workshop in the family garage where he worked on firearms and his other hobby of archery. He was an expert in the use and care of firearms and archery equipment and was constantly seeking to upgrade his collection of guns and bows. Defendant regularly went on hunting expeditions for all types of wild game, including caribou, moose, wild boar, sheep, deer, and bear, as well as small game. He hunted with both guns and bows and arrows and was proficient in hunting wild game with a handgun or pistol.

At some point in late 1988 or early 1989, the Hedgers and their neighbors began experiencing problems with gangs. Their neighborhood was not very safe and several thefts and burglaries occurred. The Hedgers' home and garage were broken into numerous times and the neighbors were having similar problems. Because of these problems, defendant began carrying a weapon with him most of the time. He generally carried a .44 caliber magnum pistol in his briefcase, which he placed on the front seat of his truck. On the night of this tragedy, he had his pistol in his truck immediately prior to the shooting.

The Hedgers were happy and doing well until early in April 1989, when defendant resumed drinking. The weekend before she was killed, Jodie discovered defendant was drinking again. On Sunday, April 23, 1989, defendant came home from a bar and fell asleep on the couch. According to defendant, when Jodie found him there the next morning they argued over his drinking and a physical altercation or fight resulted. Defendant did not

go to work that day but went out drinking again. Defendant became intoxicated and spent Monday night at a motel. Jodie contacted Al Anon and sought help for defendant's drinking. On Tuesday, April 25, 1989, defendant did go to work and after work went scouting for wild turkeys in anticipation of a later turkey hunt. Defendant testified he returned home about 10:30 p.m. and that he had not been drinking that day.

On the evening of April 26, Jodie arranged for Michelle, a babysitter, to care for the children so Jodie could attend an Al Anon meeting. When defendant arrived home that evening he demanded to know "where the hell Jodie was" according to testimony from Michelle, who described defendant as being upset. According to defendant, he was not upset and he claimed he knew Jodie had gone to the Al Anon meeting. About 9:15 p.m., defendant left the house to meet Jodie at the meeting. On his way down the street, defendant met Jodie at a nearby intersection driving toward home. Both vehicles stopped and, according to defendant, he and Jodie talked briefly, and then he turned his vehicle around and followed Jodie home.

A neighbor, Lawrence Rasnik, saw the two vehicles as they approached each other, and he testified the truck driven by defendant came to a screeching halt and defendant hollered, "where the . . . have you been?" Rasnik did not know the Hedgers, but he continued to watch them. He stated they appeared to argue and then the van driven by Jodie went on up the hill and turned into the driveway. The truck turned around and took off after the van at a high rate of speed.

The Hedgers owned at least three vehicles: a camper parked at the house, the van being driven by Jodie, and a pickup truck driven by defendant. Defendant testified that when he arrived, Jodie's van was already parked in the driveway and he assumed Jodie had gone into the house. As he drove up to park next to the van he thought he saw something moving near the parked camper. Thinking he had seen a prowler, defendant took his .44 caliber magnum pistol from his briefcase and started to look around. There was a yard light on and defendant left the truck lights on. Defendant cocked his gun so that he would be ready if attacked by the suspected prowler.

According to defendant, he heard his name called and he walked around the back of the van. As he did so, he saw someone and raised the gun up, and it went off with the bullet striking his wife in the head. She died instantly. Defendant testified he thought she was a prowler but he also claims the gun went off accidentally. He testified he did not mean to. shoot his wife. Defendant was extremely upset after the shooting and told some neighbors who had arrived on the scene, "Oh my God, I shot my wife, I thought she was a prowler."

The State charged defendant with first-degree murder, contending that after he started drinking again defendant renewed his violent conduct toward Jodie. Defendant and Jodie had argued recently, she had numerous bruises allegedly received during arguments with defendant, and she had threatened to leave defendant because of his resumed drinking. Additional facts will be related as they become relevant to the issues raised on appeal.

The first issue is that the trial court erred in admitting evidence of two prior acts of violence between defendant and Jodie. Prior to trial, the State filed a notice of intent to present evidence of the four prior altercations which took place in July 1984 between defendant and Jodie. A hearing was held and the State argued that the prior acts of violence were admissible under K.S.A. 60-455 to prove intent, opportunity, motive, and absence of mistake or accident. The State, in an earlier memorandum filed with the court, had also argued that evidence of prior marital discord was admissible, independent of K.S.A. 60-455, to show the relationship of the parties. The trial court, in a brief memorandum order, held that evidence of the prior acts of violence was admissible under K.S.A. 60-455 to prove "intent, opportunity, motive, absence of mistake or accident." The court also noted that evidence of the type proffered might be admissible independent of K.S.A. 60-455 to show the discordant marital relationship, citing *State v. Taylor*, 234 Kan. 401, 673 P.2d 1140 (1983), and *State v. Green*, 232 Kan. 116, 652 P.2d 697 (1982).

At trial, the judge admitted the testimony of a police officer from Wisconsin who testified that in the early morning hours of July 31, 1984, he received a call about a fight behind a tavern in West Allis, Wisconsin. Upon arriving at the scene, he determined that it was a domestic dispute involving an argument be-

tween defendant and Jodie and "the husband then threw her to the ground and then kicked her in the face while she was on the ground." Defendant was arrested and taken into custody. Defendant was intoxicated at the time.

Officer Samuel N. Graves of the Charles County Sheriff's Office in LaPlata, Maryland, testified that on July 20, 1984, he responded to a domestic disturbance in LaPlata. Jodie was trying to drive away from their home when defendant attempted to stop her. Defendant broke a window out of the van and entered the van after Jodie. Defendant admitted he had been arguing with Jodie, and the officer testified defendant was under the influence of alcohol at the time.

Following the testimony on these two incidents, the trial court, sua sponte, called a recess and outside the presence of the jury grilled the prosecuting attorney about the basis for the admission of the testimony. After considerable argument, the court expressed concern that the evidence may have been inadmissible under K.S.A. 60-455 and refused to allow any additional testimony of the prior acts of violence between defendant and Jodie.

Defendant argues that the trial court's admission of the two prior violent acts was error. According to defendant, the evidence of his prior crimes or civil wrongs was used by the State to show his disposition to commit this crime. Based on K.S.A. 60-455, evidence of prior crimes or civil wrongs is inadmissible for that purpose.

The State contends that its use of evidence of the prior violent acts falls within the facts specified in K.S.A. 60-455 and in addition was admissible independent of the statute. According to the State, the evidence was used to show defendant's intent and other relevant facts as specified in the statute and to show marital discord between defendant and Jodie.

K.S.A. 60-455 states:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

While it may be true that admission of the evidence under K.S.A. 60-455 was somewhat questionable, we have repeatedly held that evidence of a discordant marital relationship is admissible, independent of the statute, to show the ongoing relationship between the parties.

In *State v. Green*, 232 Kan. 116, we held:

"Evidence of a discordant marital relationship, including the defendant's prior acts of violence against his wife and threats to kill her is admissible independently of K.S.A. 60-455, where the evidence is offered not for the purpose of proving distinct offenses, but rather to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the witnesses as to the act charged. Under these circumstances a limiting instruction is not required." Syl. ¶ 4.

See *State v. Taylor*, 234 Kan. 401, 407, 673 P.2d 1140 (1983).

In the present case, although there was a lapse of nearly five years between the prior violent acts of defendant and the death of Jodie, we think the evidence was clearly admissible to show the relationship and violence that existed when defendant was drinking. The lapse of nearly five years between the prior violent acts and the present homicide does not preclude the admission of relevant evidence but only goes to the weight to be given to the evidence. See *State v. Green*, 232 Kan. 116, Syl. ¶ 5. While it is true that defendant was not intoxicated at the time of the shooting, he had begun drinking again several days prior to the death. Immediately upon the resumption of defendant's drinking, the violence against Jodie and the marital discord arose once again. The evidence was relevant and admissible to show a return to the violent and argumentative relationship that plagued the couple during the early portion of their marriage and that it was defendant's drinking which caused such a relationship. The fact that the trial court may have made its ruling allowing the evidence for the wrong reason is immaterial so long as the evidence was correctly admitted. A trial court's decision, if correct, will not be overturned on appeal even if the trial court's reasons for the ruling were incorrect. *State v. Shehan*, 242 Kan. 127, 131, 744 P.2d 824 (1987). We find no merit in defendant's first issue.

The next issue is that the trial court erred in admitting numerous gruesome photographs of Jodie's body and a videotape showing additional similar pictures of the body. Defendant argues

that the photographs and videotape were unduly prejudicial, repetitious, and irrelevant to the issues to be decided at trial. The State contends they were relevant and necessary to demonstrate to the jury how and where the shooting occurred, as well as the nature of the wound.

Jodie was shot once in the head with the .44 caliber magnum pistol. The pictures show a gaping hole just above the left eye with Jodie's brains splattered across her body and on the driveway. There is no doubt the photographs and video are gruesome, but that alone is not grounds to exclude the evidence. In *State v. Ruebke*, 240 Kan. 493, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987), similar arguments were made about a videotape showing the bodies of the victims. We stated:

"Photographs are erroneously admitted where they are unduly repetitious, gruesome, and without probative value. *State v. Dargatz*, 228 Kan. 322, 614 P.2d 430 (1980). They are not inadmissible as evidence merely because they may be gruesome and shocking, provided they are true reproductions of relevant physical facts and conditions material to matters in issue. *State v. McCorgary*, 224 Kan. 677, 681, 585 P.2d 1024 (1978)." 240 Kan. at 516.

In the present case, the photographs were admitted to show where Jodie was shot, how she was shot, and the nature and extent of her wounds. The fact that defendant admits that he shot her in the head with his .44 magnum does not make the pictures any less relevant. In *State v. Green*, 232 Kan. at 119, we stated that "even where the defendant concedes the cause of death, it is incumbent on the prosecution to prove as part of its case in chief all the elements of the crime charged; and photographs to prove the elements, including the fact and manner of death, are relevant and admissible." In *Green*, photographs of the murdered victim were admitted over the defendant's objection. The court held that, for the State to prove its case, it was necessary to prove the defendant committed the crime with premeditation and malice. The photographs were proper to prove malice and premeditation by the nature and extent of the wounds suffered by the victim. 232 Kan. at 119.

Here, the photographs were used to show the place, cause, and manner of death. Even though gruesome, the photographs were relevant to the issues in the case and admissible. The videotape was 8 to 10 minutes in length and dealt primarily with

the crime scene, lighting, visibility, distance from the defendant to the victim, and similar factual matters relevant to the State's case. The portion of the videotape relating to the victim's body is brief in comparison to the time devoted to the crime scene. Extensive photos of the crime scene were relevant on the issue of mistaken identity of the victim and to show an absence of accident or mistake. It is true that the photographs and videotape are repetitious, and the State would have been well advised to limit the extent of the photo evidence of the victim. Nevertheless, the admission of photographic evidence lies within the sound discretion of the trial court. *State v. Ruebke*, 240 Kan. at 516. We cannot say that the trial court in this case abused its discretion.

For his final issue on appeal, defendant contends that the evidence was insufficient to support the jury verdict of second-degree murder. Defendant was charged and tried on one count of first-degree murder. The jury was instructed on the lesser offenses of second-degree murder, voluntary manslaughter, and involuntary manslaughter. Defendant contends there was insufficient evidence to support a finding that he intended to kill his wife as is required by K.S.A. 21-3402.

"When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Graham*, 247 Kan. 388, Syl. ¶ 5, 799 P.2d 1003 (1990).

In applying this standard to the present case, it appears there is evidence that is sufficient for a rational factfinder to conclude, beyond a reasonable doubt, that defendant intentionally shot his wife. The prosecution called several witnesses, including policemen and neighbors at the scene, who testified there was sufficient light at the scene to see that it was Jodie who had been shot, indicating that defendant knew who he was shooting. There is evidence that defendant was once a severe alcoholic and that, when he drank, he exhibited violent tendencies and had struck Jodie on prior occasions. Further, there is evidence that, after having been sober for an extended period, defendant began drinking again approximately two weeks before Jodie was shot. Jodie was extremely depressed on Tuesday and Wednesday before the

shooting, although defendant testified their relationship was good. One witness testified that defendant recently had stated about Jodie, "She is so damn dumb, I ought to just blow her head off." The prosecution introduced evidence that on the night Jodie was shot defendant came home upset and looking for Jodie. There is also testimony that, minutes before the shooting, Jodie and defendant had an argument in the street close to their home. A witness testified that defendant was angry and hollered at his wife, "Where the . . . have you been?" and that, after he turned the truck around, he sped up the hill and into the driveway. The prosecution demonstrated through pictures, the video, and the pathologist's testimony that Jodie was shot in the head and suffered massive destruction to the brain.

There was also considerable evidence, much of it from defendant himself, that he was an expert in the use of firearms. Defendant had taken up the hobby of hunting large game with a handgun or pistol and had used the .44 magnum pistol to kill a wild boar. He also used the same gun for target practice and was thoroughly familiar with the weapon, even though defendant did testify it had a hair trigger. Under all of the evidence, the jury could have found that the gun did not fire accidentally and that defendant did not mistake his wife for a prowler. The jury was justified in concluding defendant intentionally shot his wife.

The judgment is affirmed.