No. 46,121

STATE OF KANSAS, *Appellee*, v. WILLIAM J. ANICKER, *Appellant.*

(536 P. 2d 1355)

Opinion filed June 14, 1975.

*Jay H. Vader,* of Kansas City, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, William J. Anicker, and Bertha Anicker were married in July of 1968. On May 15, 1969, Bertha was dead by strangulation and the defendant stood charged with second-degree murder in connection with her demise. He was convicted of first-degree manslaughter and was sentenced as a second offender to a term of not less than ten nor more than forty-two years. This appeal stems from that judgment.

Bertha's death occurred in the couple's own apartment and there were no outside eyewitnesses to the homicide of which anyone has knowledge. All this court knows of the circumstances attending the crime comes from a synopsis of the defendant's

testimony which is contained in his brief. The state agrees the summary is substantially correct. From his brief we learn the defendant testified he and his wife commenced drinking during the evening of May 14, and resumed their drinking the following morning till around noon, at which time defendant left to buy some cigarettes. On returning, he went to sleep next to his wife around 1:30 or 2 in the afternoon. About three hours later he awoke and found his wife lying dead on the floor beside the bed. He then called a doctor, an ambulance and the police. He testified he did not know whether the apartment door was locked following his return from buying the cigarettes. Subsequently, he went to the police station and gave a statement. This statement is not set out in the record.

The defendant's first three points are interrelated. They go to the admission into evidence of prior acts of violence against the deceased, and the court's instruction with respect thereto. The challenged testimony comes from Paul Brown, a nephew of Bertha by marriage, and from a cousin by marriage, Blondina Abels. Mr. Brown testified that he stood up for the couple when they were married; that he had seen the deceased four or five times at his house since the marriage, at which times she had black eyes and was bruised all over; that he remonstrated with the defendant, who said he would get to drinking and lose his temper and take it out on her; that ten or fifteen days before Bertha's death he talked to the defendant again, this time at the couple's apartment, and told defendant he saw no reason for Bertha being beaten and bruised like that, and defendant responded, as he had before, that he would get on the bottle and lose his temper and take it out on her.

Blondina Abels, the cousin, told of Bertha calling her sometime in November to come and get her; that when she arrived, the TV was broken and Bertha had a black and blue spot on her face and her eye was beginning to swell; Bertha was all packed and ready to go when Anicker came out in his shorts and was raving mad; she had never heard a man talk to a woman the way he did; that he threatened to kill Bertha, using profanity, and the two of them then left.

In giving its instructions, the trial court told the jury that the evidence which had been introduced tending to show that on prior occasions the defendant assaulted and beat the deceased, was to be considered only as bearing on the question of defendant's mo-

tive, opportunity, intent, knowledge or absence of mistake or accident. Thus it closely followed K. S. A. 60-455.

We regard the evidence of prior violence and of the threat against the deceased as being properly admitted as relating to intent and motive. In *State v. Patterson,* 200 Kan. 176, 434 P. 2d 808, the defendant was charged with second-degree murder in the shooting death of his wife. Evidence of prior physical mistreatment of the deceased wife was introduced along with threats previously made by her husband to kill her. We held in that case:

"In a case of marital homicide, evidence of a discordant marital relationship, and of the defendant's previous ill treatment of his wife, including his prior threats to kill her, is competent as bearing on the defendant's motive and intent." (Syl. 2.)

Not only is there evidence in this case of past physical violence on the part of the defendant, there is evidence that he threatened to kill his wife. From early times this court has held that evidence of threats by an accused against the deceased is admissible as bearing on intent and state of mind. (*State v. Horne,* 9 Kan. 119; *State v. Stackhouse,* 24 Kan. 445; *State v. McKinney,* 31 Kan. 570, 3 Pac. 356; *State v. Demming,* 79 Kan. 526, 100 Pac. 285.)

The evidence of past physical assaults and beatings was admissible also on the question of identity, another purpose for which evidence of other civil wrongs may be considered under K. S. A. 60-455. The defendant, here, had entered a plea of not guilty. He testified he went to sleep and awoke to find his wife dead. She was strangled, as it turned out, and was badly beaten and bruised. He testified he did not know whether the door was locked when he came home from buying cigarettes—thus raising the inference that someone from outside might have come in and killed his wife. Under these circumstances the question of identity was of importance, and evidence of defendant's prior violent assaults against his wife, similar in nature to the one which caused her death, was of probative value on the issue of identity, as well as intent and motivation.

Next, it is urged the court erred in admitting gruesome pictures of the deceased. We have examined these pictures and while they certainly cannot be said to be attractive, they do not offend the sensibilities as greatly as have some others which have reached this court. The photographs were offered, so it is said, to depict the bruises on the body of the deceased and, under the circumstances of the present case, they must be said to have had some

probative value. The pictures presented in this case differ from the grisly one of which we disapproved in *State v. Boyd,* 216 Kan. 373, 377, 532 P. 2d 1064. That photograph was taken at the autopsy and showed the corpse "cut open from chin to groin and laid out like a disembowled beef in a packing plant." The photos here are not unduly inflammatory in our opinion and we find no prejudicial error in their admission.

Turning to the next point, the state identified and offered into evidence certain items found in Bertha's bedroom, such as sheets, towels and items of clothing. In the offer of evidence, reference was made to bloodstains on some of the items. The prosecutor, in closing argument, referred to some of the exhibits as bloodstained. The gravamen of defendant's fifth point is there was no direct proof they were "bloodstained" and the court erred in permitting the prosecutor so to describe them. However, no objection was interposed to the prosecutor's argument when it was made. It is the general rule that reversible error cannot be predicated on misconduct of counsel in closing argument where no objection was made at the trial and no request was made that the jury be admonished to disregard the objectionable statements. (*State v. Fleury,* 203 Kan. 888, 896, 457 P. 2d 44; *State v. McDermott,* 202 Kan. 399, 405, 449 P. 2d 545; *State v. Wyman,* 198 Kan. 666, 670, 426 P. 2d 26; *State v. Ralls,* 213 Kan. 249, 250, 515 P. 2d 1205.)

Defendant's final point is without merit. His complaint is directed at remarks made by the court when defense counsel inquired, prior to objecting to the admission of certain exhibits, if his objection should be made outside the hearing of the jury. The court responded, "Yes, it should be. These are matters which are necessary, members of the jury, to preserve the defendant's rights. It is important on appeal." It is argued the court's response inadvertently indicated a disbelief in the defense theory and indicated a feeling on the court's part that the defendant was guilty.

While it is a fundamental tenet of the law that the judge be scrupulously impartial in presiding at the trial of a lawsuit and that he refrain from conduct which might influence the jury in its findings, we fail to discern any prejudice in the incident of which the defendant complains. Obviously the court was making every effort to protect the defendant's right to a fair trial and in this endeavor felt required to explain to the jury why the proceedings on the defendant's objection would be away from the jury's hearing. There is

nothing in the remarks, so far as we can see, to suggest how the court felt the case should, or would, come out, or whether an appeal would, in fact, be taken or who might take the appeal if one were taken. It does not appear to us that the court was injudicious or that prejudicial error resulted from its remarks.

The judgment of the trial court is affirmed.

FROMME, J., not participating.