592 P.2d 1348 (1979)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Michael Anthony CARDENAS, Defendant-Appellant.
No. 77-992.
Colorado Court of Appeals, Div. I.
January 4, 1979.
Rehearing Denied February 8, 1979.
Certiorari Denied April 16, 1979.
*1350 J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Mary J. Mullarkey, First Asst. Atty. Gen., Denver, for plaintiff-appellee.
John A. Purvis, Acting State Public Defender, Boulder, Douglas D. Piersel, Deputy State Public Defender, Pueblo, for defendant-appellant.
COYTE, Judge.
The defendant, Michael Anthony Cardenas, appeals his jury convictions of child abuse and assault in the third degree. We affirm both convictions.
The incident in question occurred while defendant was visiting the residence of Nancy J. Abeyta. Defendant and Ms. Abeyta testified that Ms. Abeyta's 20-month-old daughter, Tina, was "whining and fussing." Defendant picked her up and tried to persuade her to quit crying. When that failed, he spanked her a few times and placed her on the floor. Ms. Abeyta testified that defendant then picked Tina up and threw her down on the couch. Finally he threw her into an overstuffed chair that had a broken leg. The chair tipped over, causing the child to strike her head. A further altercation followed in which defendant struck Ms. Abeyta several times, causing her to lose consciousness. When she revived and realized Tina's serious condition, she and defendant called a first-aid crew and police, who transported Tina to a hospital. Tina suffered a fractured skull, and emergency surgery was necessary to save her life.
Subsequent to defendant's trial and the denial of his motion for a new trial, the Colorado Supreme Court announced its decision in People v. Hoehl, Colo., 568 P.2d 484 (1977). Hoehl reversed a conviction under the same child abuse statute with which defendant here is charged, § 18-6-401(1)(a), C.R.S.1973, because insufficient jury instructions were given. The jury instructions failed to define the statutory terms, and the Supreme Court found that the words in the statute, standing alone, did not provide adequate guidance for the jury. In particular, the court found the phrase "may endanger the child's life or health" must be explained as meaning a reasonable probability of endangerment, and the phrase "without justifiable excuse" referred to the justifications for physical force enumerated in § 18-1-703(1)(a), C.R.S.1973.
The instructions used by the trial court here contained the same deficiencies as those singled out in Hoehl, but since defendant failed to object to the tendered instructions or raise any constitutional objection to the statute at the trial court level the standard of review is raised to one of "plain error." Crim.P. 30 and 52(b).
"To constitute `plain error,' the error must `seriously affect substantial rights of the accused,' . . . and the record must disclose `a reasonable possibility that the improper instruction contributed to the defendant's conviction . ..'" People v. Brionez, Colo., 570 P.2d 1296.
*1351 In the instant case, the deficiency in jury instructions did not significantly affect the outcome of the trial. There was no claim by defendant that his actions were justifiable as disciplinary measures, so the Hoehl instruction relating to reasonable discipline is irrelevant. Where an element of a crime is not in issue, failure to instruct properly on that issue is not reversible error. People v. Pearson, 190 Colo. 313, 546 P.2d 1259 (1976).
Although the degree to which defendant's actions endangered the child was an issue raised by defendant, reversal is not mandated where the record reveals overwhelming evidence that defendant's actions created a reasonable probability that the child would be endangered. See People v. Blair, Colo., 579 P.2d 1133 (1978). Defendant testified that he knew the chair leg was broken and that he had stated to police that he "threw" Tina into the chair. Thus even defendant's own testimony clearly indicates that the child was endangered, and any erroneous jury instructions on this point were harmless beyond a reasonable doubt.
Defendant, who followed the police from the Abeyta apartment to the hospital, was arrested there without a warrant after the police officers involved were able to secure proper medical attention for Tina and the seriousness of her injuries was discovered. At the time of his arrest, defendant made certain incriminating statements which he now seeks to suppress as resulting from an invalid arrest.
We agree with the trial court that probable cause for the arrest was clearly established; the only issue on appeal is whether exigent circumstances existed so as to validate the arrest being made without a warrant. The statute applicable at the time of the arrest, § 16-3-102(1)(c), C.R.S. 1973, required that "an arrest warrant be obtained when practicable." However, failure to obtain an arrest warrant is justified whenever circumstances require an immediate action to protect the public safety. People v. Hoinville, 191 Colo. 357, 553 P.2d 777 (1976). This includes the situation where the police are faced with the choice of arresting a suspect without a warrant or allowing him to escape. People v. Saars, Colo., 584 P.2d 622 (1978).
Here, the police, upon arriving at the scene, saw the injured child, the child's mother, and the defendant. This investigation gave the police probable cause to arrest the defendant, but getting the child to the hospital was the most important concern at the moment. Upon learning the seriousness of the child's injuries, the police had probable cause to believe that defendant had committed a violent crime of life-threatening proportions. To have allowed him to leave their presence while they obtained a warrant might have resulted in his flight to escape arrest. Hence, the record supports the trial court's finding that sufficient exigent circumstances existed to justify a warrantless arrest, and the statements defendant made following that arrest were thus properly not suppressed on the basis of any defect in the arrest.
As a second ground for suppressing his incriminating statements, defendant asserts that they were made without adequate waiver of his constitutional rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Although the arresting officer read the defendant his rights from a standard advisory form, the officer did not specifically ask defendant if he could afford an attorney or if he wanted to consult a public defender or other attorney. The defendant did, however, state that he understood his rights, and he made the incriminating statements immediately following advisement.
A waiver of constitutional rights may be implied from the circumstances. People v. Stephens, 188 Colo. 8, 532 P.2d 728 (1975). Where there is no express waiver, the People carry the burden of showing clearly and convincingly that defendant relinquished his rights knowingly, intelligently, and voluntarily. Reed v. People, 171 Colo. 421, 467 P.2d 809 (1970). The determination of the validity of a waiver depends upon the totality of the circumstances. Reed, supra. Here, defendant was advised *1352 of his rights at the hospital and made an inculpatory statement immediately after indicating that he understood his rights. Before questioning began at the police station, he was again advised of his rights both orally and in writing. Although defendant had been drinking prior to the incident, there was no evidence that he was in an intoxicated state that would interfere with his understanding of the situation. Considering the total circumstances, the court found that defendant had validly waived his rights, and we conclude that that finding is sustainable under the evidence presented. Accordingly, the court did not err in refusing to suppress defendant's statements.
During the course of the trial, the People introduced four photographs depicting the room in the Abeyta apartment where the incident occurred. These photographs were taken after the overturned chair had been restored to an upright position and something placed under one corner to prop it up. Defendant objected to admission of these photographs on the grounds that they were inaccurate reconstructions of the scene.
Foundation for admission of the photographs was provided by Ms. Abeyta's testimony. The trial court admitted these photographs and stated that the minor inaccuracies contended by defendant went to the weight rather than the admissibility of the photographs. We agree.
The proper test for admission of reconstructed scenes in photographs is set forth in People v. Sexton, 192 Colo. 81, 555 P.2d 1151 (1976), i. e., the conditions must be "substantially similar" to the event reconstructed. There, the Court noted that minor variations would not preclude admission; they would merely affect the weight of the evidence. The question of what constitutes a permissible variation depends upon whether it tends to confuse or mislead the jury. Kling v. City & County of Denver, 138 Colo. 567, 335 P.2d 876 (1959). Although one factual issue in the trial court was the distance from which defendant had thrown Tina into the chair the jury was adequately apprised of the defendant's contention that the chair was not properly placed in the photograph.
Admissibility of photographic evidence is within the discretion of the trial court, and the trial court's decision to admit these photographs must be accepted on review absent showing of an abuse of discretion. People v. Sexton, supra; Reed v. Davidson Dairy Co., 97 Colo. 462, 50 P.2d 532 (1935). We find no abuse present in the court's determination where the accuracy of the photographs was substantiated by a witness familiar with the scene.
Judgment affirmed.
SMITH and BERMAN, JJ., concur.