No. 52,635

STATE OF KANSAS, *Appellee,* v. JEFFREY J. WOOD, *Appellant.*

(638 P.2d 908)

Opinion filed January 15, 1982.

*Clarence R. Wietham,* of Overland Park, argued the cause and was on the brief for the appellant.

*Susan Ellmaker,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Dennis W. Moore,* district attorney, were with her on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal by the defendant, Jeffrey J. Wood, from a conviction of murder in the second degree (K.S.A. 21-3402), after trial on a charge of first-degree murder. This case arose out of a homicide which occurred in Lenexa, Kansas, on December 8, 1979. It was undisputed that the defendant's wife, Jaylene Wood, was killed by a charge from a 20-gauge shotgun while she was sitting on a couch in the couple's home. After Jaylene was killed, the defendant admittedly shot himself intentionally with another charge from the same gun.

The only actual witness to the shooting was the defendant himself. It was undisputed that the weapon was in the defendant's hand at the time the fatal shot was discharged. The basic issue in the case was the defendant's intent—Was the killing intentional or unintentional or only an accident? The State's theory was that the defendant intentionally and maliciously murdered his wife and then shot himself. It was defendant's theory that the shooting of his wife was accidental, and, then, being grief-stricken, defendant shot himself. The jury believed the State's version of the evidence and found the defendant guilty of murder in the second degree.

It is clear from the evidentiary record in the case that the defendant had threatened and beaten his wife on other occasions prior to the killing. Also, in the course of the investigation, defendant told several different stories describing what happened. Essentially, this was a fact case in which the jury could have gone either way. Following his conviction, the defendant appealed raising eighteen points of claimed error.

As his first point, the defendant maintains that the verdict of second-degree murder was not supported by the evidence. We have carefully read the record in this case and have concluded that the evidence against the defendant was more than sufficient to establish murder in the second degree. The evidence showed that the defendant had problems controlling his temper and had been violent with his wife on several occasions before the shooting. On one prior occasion, he had abused her while he was holding a loaded gun in his hand. On the day before the homicide, he had been arguing with her and struck her. The record indicates that Mrs. Wood planned to leave her husband and did not because she feared he would follow her and kill her and would not let her take their baby. She was afraid of him. Defendant stated to a friend two or three weeks before the killing that "he would blow his old lady's head off." Considering this evidence along with the other evidence in the case, we have concluded that the evidence was sufficient to sustain a verdict of murder in the second degree.

Several of the defendant's points on the appeal are concerned with the introduction of certain testimony as to the defendant's prior mistreatment of his wife and his brutal conduct toward her. At the trial, Jaylene Wood's mother testified that her daughter called her on December 7, 1979, about seven hours before she was killed. Jaylene was crying and upset and asked her mother to come and pick her up. She went to her daughter's apartment. Jaylene Wood came out to her car and told her that defendant had beaten her that afternoon and showed her mother a cut or bruise on her lip. Jaylene expressed fears that the defendant would kill her. Investigation at the scene following the killing confirmed that the couple had been arguing and that Jaylene had decided to leave him. A number of items of her clothing were found packed in a grocery bag setting on a rocking chair in the bedroom.

The State at the trial called Edward Ketner who testified that,

four months prior to the killing, he saw the defendant throw his wife down and drag her through the living room and into the bedroom while holding a loaded .22-caliber gun. At this time, Jaylene Wood was nine months pregnant. Ketner further testified that in late November of 1979 defendant advised him that "he would blow his old lady's head off." When Ketner asked defendant what he would do then, defendant said he would blow his own head off. It was two or three weeks later that defendant shot Jaylene and then shot himself. Prior to the trial, the defendant filed a motion in limine to determine the admissibility of the testimony of Jaylene's mother and Edward Ketner under K.S.A. 60-455. At this hearing, the State introduced the testimony of an investigating officer who testified, in substance, what the testimony of those two witnesses would be. After hearing the evidence, the trial court held that the evidence of the two witnesses was admissible. Later at the trial, the two witnesses testified in the manner discussed.

The defendant maintains that it was error to permit the introduction of such testimony at the trial without first requiring an examination of the prospective witnesses *in person* outside the presence of the jury. The defendant takes the position that he was entitled as a matter of right to have the witnesses testify in person at his pretrial motion to determine the admissibility of evidence under K.S.A. 60-455. We find no such requirement under that section. At pretrial hearings on motions in limine, it is quite common for the prosecutor to state for the court, in substance, the evidence as to other crimes or civil wrongs which he intends to introduce at the trial under K.S.A. 60-455. The court then rules as a matter of law on the admissibility of the proffered evidence. There is no requirement that the witnesses testify in person at such a hearing.

The defendant further complains that the testimony of Jaylene's mother and Ketner was inadmissible under either K.S.A. 60-455 or K.S.A. 60-422(*d*). Here the testimony was not offered to prove a trait of the defendant's character but to prove intent. It is the rule in Kansas that in a case of marital homicide, evidence of a discordant marital relationship, and of the defendant's previous ill treatment of his wife, including his prior threats to kill her, is competent as bearing on the defendant's motive and intent. See *State v. Fenton,* 228 Kan. 658, 667, 620 P.2d 813 (1980); *State v.*

*Anicker,* 217 Kan. 314, 536 P.2d 1355 (1975); *State v. Patterson,* 200 Kan. 176, 434 P.2d 808 (1967). Clearly, evidence of prior threats showing that the defendant had the intent to kill his wife was relevant on the issue of defendant's intent as it existed at the time the homicide occurred. It was admissible independently of K.S.A. 60-455.

The defendant also claims that it was error for the trial court to permit the prosecutor to ask him on cross-examination, "In court today is the first time you have ever told this full story of what happened, isn't it?" Defendant maintains that this question was an impermissible comment on his right to remain silent, citing *Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed.2d 91, 96 S.Ct. 2240 (1976); *State v. Mims,* 220 Kan. 726, 556 P.2d 387 (1976); and other cases. We find no error in this regard. At the time the question was asked, the evidence showed that defendant had given several inconsistent stories as to what happened at the time of the shooting. The evidence was clear that, from the beginning of the investigation, the defendant had given statements to the police officers and had not invoked his right to remain silent. It is obvious to us that the prosecutor was simply referring to the fact that the defendant had changed his story on several occasions and, under the circumstances, the question cannot reasonably be construed as a criticism of the defendant for refusing to give a statement to the police officers. The question was directed to the fact that defendant had given inconsistent statements. It was not a comment on the defendant's exercise of his right to remain silent.

Defendant next maintains that his due process rights were violated as a result of ex parte comments made by the prosecutor to the presentence investigator who collected information for the presentence report submitted to the sentencing judge. It is clear from the record that defense counsel was shown a copy of the letter which the prosecutor had provided and that counsel had a full opportunity at the time of sentence and later at the hearing on the motion for rehearing to dispute the information as incorrect and to provide other evidence. In preparation of a presentence investigation report, a court services officer must be permitted a wide latitude in collecting information about the defendant and about his criminal activities. In collecting such information, a court services officer must often contact persons with relevant information at a time when defendant or his counsel is not

present. We find nothing improper in this. The important thing is for the defendant and his counsel to be afforded an opportunity to read and consider information contained in the presentence report and to rebut information which they deem to be incorrect. This requirement was satisfied in this case.

We have also considered each of the remaining points raised by the defendant on the appeal. We find no error in regard to any of them which would justify a reversal of defendant's conviction. We are convinced that the defendant had a fair trial, that the case was properly submitted to the jury, and that the verdict finding defendant guilty of second-degree murder is supported by substantial competent evidence. We further find that the sentence imposed by the court was not so arbitrary or unreasonable as to constitute an abuse of judicial discretion. See *State v. Coe,* 223 Kan. 153, 574 P.2d 929 (1977). Here the trial court considered the factors enumerated in K.S.A. 21-4606 when sentencing the defendant. The sentence was within the statutory limits.

The judgment of the district court is affirmed.