No. 55,047

STATE OF KANSAS, *Appellee*, v. RONALD S. KENDIG, *Appellant*.

(666 P.2d 684)

Opinion filed July 15, 1983.

*Ronald E. Wurtz*, of Topeka, argued the cause and was on the brief for appellant.

*David B. Debenham*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Gene M. Olander*, district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Ronald S. Kendig appeals his jury trial conviction of first-degree murder (K.S.A. 21-3401).

On April 14, 1982, at her Topeka home, Shelly Kendig died from being shot twice in the head. Her husband, the defendant, has contended throughout that the shots were self-inflicted. Defendant was charged with first-degree murder. No theory was advanced that the fatal shots were fired by a third party. The sole issue at trial was whether Mrs. Kendig was a victim of suicide or

whether she was murdered by the defendant. Inasmuch as no claim relative to the sufficiency of the evidence has been raised, there is no reason to include a general recitation of the evidence in this opinion. We will, of course, state such facts as are necessary to the determination of particular issues before us.

The first issue on appeal is whether the district court abused its discretionary powers in permitting the State to endorse additional witnesses.

K.S.A. 22-3201(6) provides:

"(6) The prosecuting attorney shall endorse the names of all witnesses known to said attorney upon the complaint, information and indictment at the time of filing the same. Said attorney may endorse thereon the names of other witnesses as may afterward become known to said attorney, at such times as the court may by rule or otherwise prescribe."

The endorsement of additional witnesses on an information is a matter of judicial discretion and will not be the basis for reversal absent proof of an abuse of discretion. The test of abuse of the exercise of that discretion is whether or not the rights of the defendant were unfairly prejudiced by the endorsement. *State v. Costa,* 228 Kan. 308, 613 P.2d 1359 (1980). In evaluating the late endorsement of witnesses, the appellate court should not presume prejudice. Actual prejudice must be shown by an appellant such as will impair the ability of a defendant to defend against the charges. *State v. Ferguson, Washington & Tucker,* 228 Kan. 522, 618 P.2d 1186 (1980).

Between June 21 and August 5, 1982, the State, in various motions, moved to endorse a substantial number of additional witnesses. All of such motions were granted. Trial commenced on August 9, 1982, with voir dire being completed on August 17, 1982. The late-endorsed witnesses were a divergent group, including medical experts and police officers, most of whom did not testify at trial. Nothing would be gained in this opinion by reciting the facts and circumstances relative to each late-endorsed witness. It is sufficient to say we have carefully examined the record and find no abuse of discretion relative to the late endorsement of witnesses.

The second issue is alleged abuse of discretion in the admission of demonstrative photographs and testimony relative thereto.

William Tucker was a firearms examiner employed by the

Kansas Bureau of Investigation. Mr. Tucker conducted photo-graphed tests using a live model with physical characteristics similar to the deceased to demonstrate how Ms. Kendig would have to have held the gun to inflict the injuries. In so doing Mr. Tucker used crime scene photographs in order to duplicate the scene.

Defendant objected to the posed photographs on the grounds the deceased's position on the bed at the time of death may have been altered by the efforts of the emergency medical personnel during resuscitation attempts. Further, defendant challenges the propriety of the demonstration on the basis the model's arm length was approximately one-half inch shorter than that of deceased.

The admission of posed photographs has been widely dis-cussed in cases and legal treatises. See Annot., Admissibility of Posed Photograph Based on Recollection of Position of Persons or Movable Objects, 19 A.L.R.2d 877. Jones on Evidence has commented:

"Whether a photograph of a reconstructed scene is admissible depends in the first place on whether the reconstruction of the scene would be proper if made as an in-court demonstration. In the second place it depends on whether the photograph accurately portrays the scene which is reenacted through the photo-graph. *The room for discretion is enlarged if the scene to be portrayed or posed is subject to different versions because of conflicting testimony as to the physical facts on which the reconstruction is based.*" 3 Jones on Evidence § 17:52, p. 356 (6th ed. 1972). (Emphasis supplied.)

Admission of demonstrative photographs lies within the broad discretion of the trial judge. *State v. Jones,* 202 Kan. 31, 42, 446 P.2d 851 (1968). See also *State v. Wilson,* 215 Kan. 437, Syl. ¶ 4, 524 P.2d 224 (1974). In determining whether demonstrative photographs should be admitted a trial judge must determine whether they are relevant and whether a proper foundation has been laid. *State v. Woolridge,* 2 Kan. App. 2d 449, 450, 581 P.2d 403, *rev. denied* 225 Kan. 846 (1978). See also *State v. Ebel-sheiser,* 242 Iowa 49, Syl. ¶ 5, 43 N.W.2d 706 (1950). Proper foundation exists when the witness demonstrates he possesses the requisite skill and experience to conduct the demonstration and displays the accuracy and reliability of the models and photographs. *State v. Peoples,* 227 Kan. 127, 132, 605 P.2d 135 (1980). The question of sufficiency of the preliminary proof to show the accuracy and reliability of the photographs rests largely

in the trial judge's discretion. *State v. Woolridge,* 2 Kan. App. 2d at 450.

The proper test for admission of reconstructed photographic scenes is whether the conditions are the same or substantially similar to the events depicted. Minor differences go to the weight of the evidence rather than its admissibility. The question of what constitutes a permissible variation depends on whether it tends to confuse or mislead the jury. The admissibility of photographic evidence is within the discretion of the trial judge, and the trial judge's decision to admit such photographs must be accepted on appellate review absent a showing of abuse of discretion. *People v. Cardenas,* 42 Colo. App. 61, 65-66, 592 P.2d 1348 (1979).

In the instant action the demonstrative photographs were relevant to the question of whether Ms. Kendig's death was a homicide or suicide. The expertise of the witness was sufficiently established. The trial judge, in the exercise of his broad discretion, was satisfied with the accuracy and reliability of the demonstration. The fact there may have been some discrepancy between the crime scene and the demonstrative scenes went to the weight of the evidence, not its admissibility. The jury was made aware of possible differences.

We conclude the trial court did not abuse its discretion in admitting the demonstrative evidence.

In connection with the testimony of Mr. Tucker relative to the photographs, defendant contends the court erred in permitting a hearsay statement in the State's direct examination. The complained-of testimony is as follows:

"A. This [photograph] is depicting the gun at approximately five and three-quarters to six inches away from the head, pointing straight downward at the forehead with the thumb as the actuator on the trigger; in other words, using the thumb to cause the gun to go off.

"Q. For the record, what are the positions of the arms in that?

"A. They are extended.

"Q. Exhibit No. (55); would you explain that, please.

"A. Exhibit No. (55) is having our individual hold the gun in a different manner with one hand with the—obviously, *with the wrist cocked over as far as* [it] can possibly go, and we're trying to show the gun—

   "[Defense Counsel]: Excuse me. I would object, Your Honor, to the statement, 'With the wrist cocked over as far as [it] can possibly go.' There is no way that we could cross examine the model to figure out at the time that was taken whether or not that is true.

"I think the witness can only testify as to what the pictures show, not the extent to which any bodily function was extended.

"THE COURT: Well, he was supervising it. Overruled." (Emphasis supplied.)

Defendant contends the phrase "with the wrist cocked over as far as [it] can possibly go" is hearsay as only the model herself could competently state what she could or could not do. The phrase was not hearsay. The witness was only describing his own observation and was not testifying as to any statements made by the model.

We conclude this issue in its totality is without merit.

The third issue is alleged error relative to the trial court's failure to strike the answer of a witness.

One of the defense strategies in trial was to attempt to depict the deceased as a violent person and the defendant as a non-violent person. The State's witness involved in the issue is Patricia D. Jones, a friend of the deceased. On cross-examination the following exchange occurred (objected-to answer is emphasized):

"Q. Did you ever get any complaints from Shelly that Ron was beating her, or abusive physically to her in any way whatsoever?

"A. Shelly was very loyal, and would not—did not tell me about that. I have friends that have told me of it, but not Shelly.

"Q. Friends that have told you of it?

"A. Yes.

"Q. Have any of your friends ever told you about Shelly beating on Ron?

"A. No. *I just had a friend tell me about the black eye she sustained from him.*

"[Defense Counsel]: Ma'am—Your Honor, I move that that statement by that woman be stricken from the record. It is totally hearsay and outside the scope of examination.

"[State's Counsel]: Your Honor, it is responsive.

"THE COURT: It is in Cross Examination."

The question posed by defense counsel sought an answer from the witness as to what "friends" had told her. Defense counsel was seeking a hearsay response and was only dissatisfied with the unfavorable hearsay response he received. The answer was invited and no error may be predicated thereon on the grounds of hearsay.

Defendant next argues the answer was unresponsive. We do not believe that it was. The defense counsel's cross-examination

had already opened up the subject of violence committed upon the deceased by the defendant.

Finally, defendant argues the answer was in violation of K.S.A. 60-455 which prohibits the use of prior crimes or civil wrongs to indicate a disposition to commit an offense. In *State v. Green*, 232 Kan. 116, 652 P.2d 697 (1982), we stated:

"Numerous decisions by this court have pointed out that where a marital homicide is involved, evidence of a discordant marital relationship, and of the defendant's previous ill treatment of his wife, including his prior threats to kill her, is competent as bearing on the defendant's motive and intent. *State v. Fenton*, 228 Kan. 658, 667-68, 620 P.2d 813 (1980); *State v. Anicker*, 217 Kan. 314, 316, 536 P.2d 1355 (1975); *State v. Patterson*, 200 Kan. 176, Syl. ¶ 2, 434 P.2d 808 (1967). In *State v. Wood*, 230 Kan. 477, 479-80, 638 P.2d 908 (1982), we held such evidence was admissible independent of K.S.A. 60-455, where it was not offered for the purpose of proving the offense charged, but rather to establish the prior violent relationship between the parties and the defendant's prior intent to kill his wife. These and other cases have indicated the high degree of relevancy inherent in such evidence to prove a critical issue in the case. See *State v. Egbert*, 227 Kan. 266, 269, 606 P.2d 1022, *cert. denied* 449 U.S. 965 (1980); *State v. Rupe*, 226 Kan. 474, 477-78, 601 P.2d 675 (1979)." 232 Kan. at 121.

Further, as previously noted, defendant was the party pursuing this line of questioning.

We conclude this issue in its totality is without merit.

The fourth issue is a claim of ineffective assistance of counsel.

Recently in *State v. Miesbauer*, 232 Kan. 291, 654 P.2d 934 (1982), this court reiterated the applicable rules previously stated in *State v. Crossman*, 229 Kan. 384, 624 P.2d 461 (1981), as follows:

" 'The rules relative to determination of effective assistance of counsel were stated in *Schoonover v. State*, 2 Kan. App. 2d 481, Syl. ¶¶ 2-4, 582 P.2d 292, *rev. denied* 225 Kan. 845 (1978), and iterated in *State v. Voiles*, 226 Kan. 469, 470-471, 601 P.2d 1121 (1979), as follows:

" ' "The right to effective assistance of counsel presupposes that counsel will be competent and capable of conducting a genuine defense on behalf of the accused. While the law does not guarantee the assistance of the most brilliant and experienced counsel, it does require honest, loyal, genuine and faithful representation on the part of counsel, be he retained or appointed.

" ' "Conduct of defense counsel which is so dishonest, incompetent or inadequate as to amount in practical effect to no counsel at all clearly violates a defendant's Sixth Amendment right to counsel. However, conduct which amounts to a substantial deviation from that expected of a reasonably competent lawyer in the community, such that no lawyer of average ability would engage in it, and which causes the client's conviction or otherwise works to the client's substantial disadvantage, is also a deprivation of the constitutional guarantee of 'effective' counsel.

" ' "In applying the foregoing standard to counsel's performance, the effective assistance of counsel cannot be equated with the successful assistance of counsel. The adequacy of an attorney's services on behalf of an accused must be gauged by the totality of his representation, not by fragmentary segments analyzed in isolated cells." 229 Kan. at 389.' " 232 Kan. at 299.

Defendant, on appeal, points to several alleged instances of ineffective assistance of counsel. Some of these arise from the wisdom of hindsight. As stated in *Cook v. State,* _____ Ind. App. _____, 403 N.E.2d 860 (1980):

"It is one of the characteristics of human experience that hindsight often reveals alternative courses of conduct that may have produced different results if only they had been employed. Hindsight, however, is not the vantage point from which we judge allegations of incompetence. *Thomas v. State,* (1969) 251 Ind. 546, 242 N.E.2d 919. It may be that had defendant's counsel on appeal conducted the defense at trial, he would have done things differently. Whether or not he would have fared better before the jury is a matter of conjecture. Where experienced attorneys might disagree on the best tactics, deliberate decisions made for strategic reasons may not establish ineffective counsel. *Crocker v. State,* (1978) Ind. App., 378 N.E.2d 645." 403 N.E.2d at 868.

Applying the well-established rules set forth in *State v. Miesbauer,* 232 Kan. 291, we have no hesitancy in concluding this issue is without merit.

The fifth issue is whether defendant was denied a fair trial by virtue of allegedly injudicious actions and comments by the trial judge in the presence of the jury.

Allegations of judicial misconduct during trial must be decided on the particular facts and circumstances surrounding such alleged instances of misconduct. In order to warrant or require the granting of a new trial, it must affirmatively appear the conduct was of such a nature it prejudiced the substantial rights of the complaining party. *State v. Stoops,* 4 Kan. App. 2d 130, 132, 603 P.2d 221 (1979); *State v. Thomson,* 188 Kan. 171, 174, 360 P.2d 871 (1961). It is a fundamental tenet of law the judge must be scrupulously impartial in presiding at the trial and he must refrain from conduct which might influence the jury in its findings. *State v. Anicker,* 217 Kan. 314, 317, 536 P.2d 1355 (1975).

Each of the four instances of claimed judicial misconduct is of such trivial nature no purpose would be served by setting forth in this opinion the facts and circumstances pertaining thereto. It is sufficient to say that we have considered each claim, individually and collectively, and conclude this issue is wholly without

merit. It is appropriate to note that, in reviewing the record, we are impressed with the careful and capable manner in which the trial judge handled this lengthy and well-publicized trial.

Other points raised have been considered and found to be without merit.

The judgment is affirmed.