NOT DESIGNATED FOR PUBLICATION

No. 126,095

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOE LOUIS STEWART JR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Submitted without oral argument. Opinion filed July 12, 2024. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., ATCHESON and PICKERING, JJ.

PER CURIAM: Joe Louis Stewart Jr. appeals the district court's denial of his K.S.A. 60-1507 motions, claiming the district court's findings in denying two of his claims of ineffective assistance of counsel are not supported by substantial competent evidence. He also contends the district court failed to address other claims he raised below.

After reviewing the record, we find substantial competent evidence supports the district court's decision. We find Stewart's arguments are unpreserved or unpersuasive and affirm the denial of his motions.

1

FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Stewart of two counts of aggravated indecent liberties with a child under the age of 14 years, for crimes committed in July 2016. The district court sentenced him to life in prison, with a mandatory 25 years on each count, to be served concurrently with one another. He appealed his convictions, in part because he claimed the district court erred when it allowed the State to introduce K.S.A. 60-455 evidence. This court affirmed his convictions. *State v. Stewart*, No. 120,655, 2020 WL 1074710 (Kan. App. 2020) (unpublished opinion). In so doing, we found that Stewart's trial counsel, Frederick Meier, failed to preserve his objection to the admission of the 60-455 evidence because at trial, he did not renew his pretrial objection. Even so, we still considered the merits of Stewart's argument and found the 60-455 evidence was properly admitted for propensity purposes. We also found it did not contribute to an improper verdict or distract the jury from the central issue presented at trial. The Kansas Supreme Court denied Stewart's petition for review.

After his direct appeal concluded, Stewart filed a K.S.A. 60-1507 motion on his own behalf, asserting several claims. He mainly argued he had received ineffective legal assistance from trial counsel (Deborah Huth, who was first appointed, and Meier, who was appointed after Huth withdrew) and from his appellate counsel, Korey Kaul, in his direct appeal. But he also alleged both the trial court and prosecutor committed errors which denied him a fair trial. The district court appointed Paul Dean to serve as Stewart's 60-1507 counsel.

Dean filed an amended 60-1507 motion. The amended motion alleged, among other deficiencies, that Meier failed to object to the admission of 60-455 evidence at trial and failed to object to the testimony of forensic interviewers Kayla Delgado and Brad Johnson. Dean claimed these witnesses' testimony was offered to improperly vouch for

2

the credibility of Stewart's child victims. He also argued Delgado's testimony constituted improper expert opinion.

The district court granted Stewart an evidentiary hearing. Meier testified, but Stewart did not. After the parties submitted written closing arguments, the district court issued oral findings of fact and conclusions of law on the record. It denied Stewart's motions and found Stewart suffered no prejudice.

Stewart now appeals the district court's decision.

REVIEW OF STEWART'S APPELLATE CHALLENGES

Stewart asserts two arguments on appeal concerning ineffective assistance of counsel. First, Stewart posits Meier was ineffective for failing to object to Delgado's and Johnson's testimonies, which he alleges was "offered to merely vouch for the testimony of the victim[s]." Second, he maintains Kaul was ineffective in his direct appeal for failing to provide the record citation where Meier objected at trial to the admission of the 60-455 evidence. Stewart also contends the district court erred by failing to address all claims asserted in both 60-1507 motions filed below—the motion Stewart filed on his own behalf and the amended 60-1507 motion filed by Dean. Stewart does not specify which claims the district court allegedly failed to address.

*Standard of review*

Since the district court held an evidentiary hearing on the K.S.A. 60-1507 motions, it was required to issue findings of fact and conclusions of law on the issue presented. Supreme Court Rule 183(j) (2024 Kan. S. Ct. R. at 242). We review the district court's factual findings to determine whether they are supported by substantial competent evidence and are sufficient to support that court's conclusions of law. Substantial

3

competent evidence possesses both relevance and substance. *Sampson v. Sampson*, 267 Kan. 175, 181, 975 P.2d 1211 (1999). The district court's conclusions of law are reviewed de novo. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

*Legal rules governing ineffective assistance of counsel claims.*

Our Supreme Court described how we examine ineffective assistance of counsel claims in *Chamberlin v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting the two-pronged standard from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]):

> "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.
>
> "(a) The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
>
> "(b) With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."

When applying these rules to the facts before us, we agree with the district court's assessment of both Meier's and Kaul's representation of Stewart. We find Meier's performance was not deficient and, even assuming Kaul's representation was deficient, Stewart suffered no prejudice from it.

*Meier was not ineffective because he failed to object to two witnesses' testimonies which Stewart contends improperly vouched for child victims.*

On appeal, Stewart simply reasserts the arguments he made below on this issue while wholly ignoring the district court's reasoning for denying him relief. He argues Meier should have objected to testimony from two of the State's witnesses, Kayla Delgado, a child protection specialist with the Kansas Department for Children and Families, and Brad Johnson, a juvenile investigator with the Lawrence Police Department. Delgado testified about her experience investigating the alleged child victim in this case, and Johnson testified about his experience investigating a previous child victim of Stewart's. The State had formerly endorsed Johnson's testimony for purposes of 60-455 evidence. These witnesses, according to Stewart, provided testimony which improperly vouched for the testimony of Stewart's child victims. And he repeats his claim that Delgado provided improper expert opinion testimony.

Below and on appeal, Stewart points to three portions of Delgado's testimony which he claims were objectionable. These three colloquies, between a prosecutor and Delgado, read:

"Q. Okay. And since these interviews are about sexual abuse, is your goal in the interview to actually get a disclosure from that child?

"A. No. My goal is just to allow the child to talk about what their experience has been. If that involves a disclosure, then we talk about that. And if it doesn't, we don't force anybody to talk about anything they don't want to talk about or anything that didn't happen.

5

"Q. And in your experience, do some kids just never disclose?

"A. That's correct.

. . . .

"Q. And you've previously indicated that you've done about 800 forensic interviews, correct?

"A. That's correct.

"Q. And through your training and experience, do all children, when they disclose to you or talk about this, have the same reaction, body actions, emotions?

"A. Um, they vary. Some have—are just matter of fact this is what happened, um, some can be emotional. Their body language and their reactions vary.

"Q. So, basically, they show different traits and, um, not all of them cry, not all of them are matter of fact?

"A. Correct.

. . . .

"Q. Okay. And Mr. Meier brought up that you don't challenge a kid, why don't you challenge them in your interviews?

"A. Um, it's—that's not the setting, um, for a child to be challenged. We're not there to accuse them of whether they're, you know, telling the truth or not telling the truth. My job is to allow them an opportunity to talk about anything that they have experienced."

And Stewart generally cites 10 pages of Johnson's testimony. Given the breadth of the citation to Johnson's testimony, it is hard to discern what exact testimony Stewart contends was inappropriate. But below, Stewart pointed to a colloquy between Johnson and the prosecutor to support a different claim. This separate claim asserted Meier was ineffective because he failed to object to 60-455 evidence used in Johnson's testimony. The exchange between Johnson and the prosecutor stated:

"Q. I apologize, I had to think about for a minute. In your experience throughout the three years that you—well, and currently, I guess, actually—that you've worked these types of cases involving juveniles, can you tell us whether you normally see a variation in details or do you rarely see a variation in details?

"A. Almost always see a variation in details.

6

"Q. And have you ever had the opportunity, other than this case, to investigate cases that had happened years prior to your getting it?

"A. Yes.

"Q. And in prior investigations have you seen some details then that remain consistent but then some details that can change over time based upon passage of time?

"A. That is my experience, yes."

Stewart believes Delgado's and Johnson's testimonies improperly explained the victims' "delay or non-disclosure of the incident" and "changes in the victims' stories." And he alleges that Delgado's testimony was provided "under the guise of an expert" opinion. We disagree. Not only does he cite no legal authority to support his claims, but he overstates the testimony at issue.

To begin, neither witness affirmatively discussed Stewart's victims in these colloquies. They did not tell the jury the victims should or should not be believed or opine on whether the victims were truthful. They made no statements assessing the credibility of the victims or the victims' stories. Rather, the prosecutor generally discussed with Delgado and Johnson their experiences with other cases and children.

The first colloquy Stewart points to is simply Delgado explaining the process of interviewing children involved in sexual abuse allegations. Indeed, when this first colloquy occurred, Delgado had not even mentioned the child victim here at all. This testimony served as foundation to explain Delgado's interview process. It did not concern the child victim's credibility in anyway.

The second colloquy similarly did not mention the child victim. This exchange with the prosecutor was immediately proceeded by a video introduced as evidence. While the record does not include this video, it was apparently Delgado's interview of the child victim. Given the questions the prosecutor posed to Delgado, it is possible the video showed the child victim did not cry or display certain emotions. But without this video,

7

we cannot say. Based on the record before us, it is just as likely that this testimony was like the first colloquy: Delgado's general experiences interviewing children involved in alleged sexual abuse, not testimony about the credibility of the child victim here.

The third colloquy occurred during Delgado's redirect after Meier cross-examined Delgado. Meier questioned Delgado's policy of not challenging children's stories during the interview process. Meier chose to attack Delgado on this policy because he thought this approach to interviewing children does not "challenge the child as to why this happened or how it happened" and "there's no demonstrable reliability to be built into the process."

In response, the prosecutor asked Delgado during redirect why she did not challenge children being interviewed. Delgado then stated it is not her responsibility to decipher whether the child was telling the truth; it is to allow the child to talk. This testimony shows Delgado did not form an opinion on the child victim's truthfulness, much less vouch for it. And Stewart unfairly characterizes the State's purpose in offering this testimony as an attempt to vouch for the victim's testimony when, in fact, this line of questioning was prompted by Meier's cross-examination.

The prosecutor's colloquy with Johnson similarly is not improper credibility vouching. Johnson was questioned by the prosecutor on his experience investigating a previous child victim of Stewart's. In this colloquy, which discusses how juveniles' stories "var[y] in details. . . over time based upon passage of time," Johnson testified in his experience there was "[a]lmost always . . . a variation in details." This exchange is not, as Stewart contends, an "attempt[] to explain away any changes in the victims' stories." Johnson was not vouching for the victim's credibility. If anything, this testimony shows victims can have conflicting stories. It is still up to the jury to decide whether those inconsistent stories are credible. Neither the prosecutor nor Johnson told the jury to believe the victim's story even though, in other cases, victims sometimes assert stories

8

with varying details. Again, at no time did the prosecutor or Johnson explicitly make statements about either of Stewart's child victims' credibility.

Next, Meier said he chose not to object to Delgado's and Johnson's testimonies, which makes his failure to object a judgment call rather than an inadvertent mistake. This fact is important to our analysis because "strategic and tactical decisions are the exclusive province of the lawyer after consultation with his or her client." *Boldridge v. State*, 289 Kan. 618, 639-40, 215 P.3d 585 (2009). As such, "[w]here experienced attorneys might disagree on the best tactics, deliberate decisions made for strategic reasons may not establish ineffective counsel." *State v. Kendig*, 233 Kan. 890, 896, 666 P.2d 684 (1983).

Meier testified he was on "the edge of [his] chair during [Delgado's and Johnson's] testimon[ies] waiting for an improper question or answer." But Meier chose not to object because he did not want to draw the jury's attention to Delgado's and Johnson's testimonies when he was sure their testimony was proper because it was "based on their experiences" as investigators. If he had objected to proper testimony, Meier believed he would have been overruled by the district court and, in essence, the jury would hear the judge basically say, "[T]he witness is right and [Meier is] wrong." Meier felt neither of these interviewer witnesses "ever crossed the threshold" from describing the interview process into providing improper opinion.

In explaining its decision, the district court also pointed out that Meier attempted to use the testimony Stewart cites against Delgado and Johnson, attempting to impeach their methods. The court noted Meir basically argued the neutral way in which both witnesses proceeded with their interviews of the child victims was faulty because it did not allow Delgado and Johnson to gauge the victims' credibility.

The district court also agreed with Meier that Delgado did not offer improper opinion testimony. It cited *State v. Howling*, 310 Kan. 633, 448 P.3d 409 (2019), and

noted: "[F]orensic interview and factual testimony of [the] interviewer [is] not expert testimony." In *Howling*, our Supreme Court found testimony of a forensic interviewer describing her training and experience and interview of a child victim was not improper opinion testimony. 310 Kan. at 640-41. As in *Howling*, Delgado provided factual information about the interview process and offered no opinion or conclusion about the facts here. We cannot fault Meier for failing to lodge a meritless objection to this testimony. Stewart also fails to address—much less challenge—the district court's reasoning on appeal.

Delgado and Johnson did not improperly vouch for the child victims, nor did Delgado offer improper opinion evidence. Meier also made a tactical decision not to object to their testimony, and he attempted to use this testimony as part of a strategy to impeach the credibility of the interview evidence. The district court's factual findings that Meier did not provide ineffective legal assistance are grounded in substantial competent evidence, and we see no error in its denial of Stewart's motion on this basis.

*Stewart has not established prejudice from the admission of the K.S.A. 60-455 evidence.*

In Stewart's direct appeal, his appellate counsel Kaul argued the district court erred when it allowed the State to introduce evidence of a prior instance of sexual misconduct under K.S.A. 2017 Supp. 60-455(d). Specifically, this evidence came from the testimony of two witnesses, T.T. and J.T. The witnesses testified about Stewart's prior sexual misconduct. In addressing this issue, we determined the record did not show Stewart's trial counsel Meier made "a timely and specific objection to the K.S.A. 2017 Supp. 60-455(d) evidence at trial." *Stewart*, 2020 WL 1074710, at *3. Although Meier objected to the 60-455 evidence before witnesses and evidence were presented, we recognized this objection was not a timely contemporaneous objection because it was not lodged when the 60-455 evidence was presented.

10

Below, Stewart argued in his amended 60-1507 motion (filed by his appointed counsel Dean) that Meier deficiently performed because he failed to object to an "allegation of a prior wrong act under K.S.A. 60-455." But in Stewart's opening 60-1507 motion, he stated Kaul deficiently performed because counsel "fail[ed] to state 'where' on trial record that [Meier] did make a continuous objection" under K.S.A. 60-455. On appeal, Stewart's arguments do not become any clearer. He "argues here that not only was trial counsel ineffective, as already noted by this Court, but [Stewart's] appella[te] counsel was ineffective for not citing to the trial record exactly where and how often his first and second trial counsel objected." In Stewart's brief on appeal, he lists multiple record citations to show Meier did object to the State's 60-455 evidence. Nowhere in Stewart's brief does he suggest these are alternative arguments.

Ultimately, both arguments fail because Stewart does not address our analysis in his direct appeal where we found the K.S.A. 60-455 evidence was admissible. That is, despite finding Meier failed to preserve the objection, we examined whether the admission of this evidence prejudiced Stewart and determined it did not.

In Stewart's direct appeal, we went through a lengthy analysis to determine whether the district court properly admitted T.T. and J.T.'s testimony describing Stewart's prior sexual misconduct. *Stewart*, 2020 WL 1074710, at \*4-6. We noted under *State v. Prine*, 297 Kan. 460, Syl. ¶ 3, 303 P.3d 662 (2013), the Kansas Supreme Court held:

> "Under the plain language of K.S.A. 2009 Supp. 60-455(d), the legislature carved out an exception to the prohibition on admission of certain types of other crimes and civil wrongs evidence to prove propensity of a criminal defendant to commit the charged crime or crimes for sex crime prosecutions. As long as the evidence is of 'another act or offense of sexual misconduct' and is relevant to propensity or 'any matter,' it is admissible, as long as the district judge is satisfied that the probative value of the evidence outweighs its potential for undue prejudice."

We found the district court's decision to admit T.T.'s and J.T.'s testimonies under K.S.A. 60-455 was not an abuse of discretion because the testimony was not unduly prejudicial. *Stewart*, 2020 WL 1074710, at *5-6.

Since we found this testimony was admissible, regardless of whether Meier's objection was timely, the State maintains that decision is res judicata to Stewart's current claim. Res judicata "'prohibits a party from asserting in a second lawsuit any matter that might have been asserted in the first lawsuit.'" *Winkel v. Miller*, 288 Kan. 455, 468, 205 P.3d 688 (2009). Under *State v. Kingsley*, 299 Kan. 896, Syl. ¶ 2, 326 P.3d 1083 (2014): "If a direct appeal has been taken from a criminal conviction or sentence, the doctrine of res judicata provides that the parties to the appeal are barred from relitigating any issue decided in the direct appeal."

But our Supreme Court has refined this concept in the context of a 60-1507 motion alleging ineffective assistance of counsel based on a trial error addressed in a direct appeal. See *Bogguess v. State*, 306 Kan. 574, 579-80, 395 P.3d 447 (2017). There, it held res judicata did not bar a subsequent ineffective assistance of counsel claim based on a trial error despite the similar factual underpinnings of the two claims. That said, just because Stewart's ineffective assistance of trial counsel claim is not barred by res judicata does not mean it has merit and is not impacted by our prior analysis of his trial error claim. See *Bogguess*, 306 Kan. at 583 (upholding the Court of Appeals' finding that the defendant suffered no prejudice from his counsel's alleged ineffective assistance based on the same analysis presented in the defendant's direct appeal).

Stewart bases his ineffective assistance claim squarely on our finding in his direct appeal that Meier failed to timely object to the admission of the 60-455 evidence—asserting this means Meier was ineffective for failing to object and Kaul was ineffective for failing to show Meier timely objected. Yet he ignores our detailed analysis explaining why this evidence was admissible. *Stewart*, 2020 WL 1074710, at *4-6. This failure

12

dooms his claim since he cannot show any prejudice from the alleged ineffective assistance of either of his counsel. See *Chamberlin*, 236 Kan. at 657 (noting defendants must prove counsel prejudiced their defense to sustain an ineffective assistance of counsel claim). For instance, Stewart alleges here that the 60-455 evidence was prejudicial because it involved allegations of prior sexual misconduct rather than prior convictions. Yet we discounted this very argument in his direct appeal by noting both victims who made the allegations testified in Stewart's trial and were subject to cross-examination, so the jury had the opportunity to assess their credibility and weigh the differences between those victims' version of the event. *Stewart*, 2020 WL 1074710, at *5-6. Stewart does not address this reasoning nor does he offer any argument to undercut it.

Whether Meier timely objected and whether Kaul properly cited Meier's timely objection is irrelevant if the objection is meritless. Stewart's conclusory statements that the evidence was prejudicial and the district court abused its discretion in admitting it do not overcome our reasoning in his direct appeal explaining why the evidence was admissible and why we found the district court did not abuse its discretion in admitting it. We see no reason to depart from that analysis now. We therefore find that even if we assume both Stewart's trial and appellate counsel were ineffective as he alleges, the alleged ineffective legal assistance did not prejudice his defense and deprive him of a fair trial. As such, the district court did not err in denying his 60-1507 motions on this basis.

*Stewart has failed to preserve his remaining claims.*

Along with the two ineffective assistance of counsel claims addressed above, Stewart contends the district court erred by not considering all the claims he asserted below. Stewart contends that when the district court held an evidentiary hearing on his 60-1507 motion, the district court only considered Stewart's amended motion (filed by Dean) and not his original motion (filed on his own behalf). He urges us to remand this

case to the district court for a new hearing so the court can consider the claims it allegedly ignored. But again, he does not specify which claims he believes the district court failed to address.

In his original motion, Stewart asserted over a dozen claims, if not closer to or above two dozen. These claims were generally grouped as claims against trial counsel, appellant counsel, the trial court, and the prosecutor. In the amended motion that Dean filed, he asserted about four claims, which all alleged ineffective assistance of trial counsel. Dean specified the amended motion's claims were "intended to supplement and not replace the initial motion filed pursuant to K.S.A. 60-1507."

When the district court announced its decision on Stewart's 60-1507 motions, it noted it would address "some" claims from both motions. The judge stated:

> "I'm going to address the issues presented at the trial and, first, I'm going to address the issues that were contained in the amended petition filed in this case. The Court would note that there was a petition filed by Mr. Stewart and then subsequently Mr. Dean filed an amended petition. I'm going to address *some* of the issues on both of those documents, but I think the amended petition is actually the controlling issue in the case since the petition was amended." (Emphasis added.)

Stewart argues because the district court chose only "to address *some* of the issues" in the original motion and the amended motion, the district court violated Supreme Court Rule 183(j). Rule 183(j) requires the district court, in assessing 60-1507 motions, to "make findings of fact and conclusions of law on all issues presented." Supreme Court Rule 183(j) (2024 Kan. S. Ct. R. at 242).

The State counters that we should consider the district court's written and oral findings of fact and conclusions of law "taken together." The Kansas Supreme Court has agreed this "taken together" approach is sufficient, especially when a 60-1507 movant's

14

motion "'include[s] numerous issues which require[] the district court's attention.'" *Phillips v. State*, 282 Kan. 154, 179, 144 P.3d 48 (2006) (quoting *Phillips v. State*, No. 92,233, 2005 WL 2715650, at *3 [Kan. App. 2005] [unpublished opinion]).

For many reasons we find Stewart has failed to preserve his remaining claims. First, Stewart fails to explain which claims he believes the district court ignored. Instead, he takes a stray (even if imprudent) comment out of context. Although the district court mistakenly said it was only reviewing "some" of Stewart's 60-1507 issues, the district court later told Stewart it intended on covering its bases on all issues. The district court judge stated he wanted to review "other things contained in the petition. *Not the amended petition*, but I just want to address all these issues so there's nothing hanging out." (Emphasis added.) After the district court made this statement, it proceeded to make a ruling on a claim from Stewart's original motion, not his amended motion. Then, as the State painstakingly points out in its brief, the district court addressed each of Stewart's ineffective assistance of counsel claims.

In issuing its oral ruling, the district court thoroughly discussed the claims presented in the amended motion by walking through testimony and evidence presented at the 60-1507 evidentiary hearing. And it discussed the rest of Stewart's claims which were only contained in the original motion, including Stewart's claim Meier picked a contaminated jury, Meier failed to impeach Officer Jaffar Agha, and Meier failed to subpoena and call different witnesses. In the midst of this discussion, the district court listed many of the remaining claims in the original motion not asserted in the amended motion. It discussed Stewart's claims related to Meier's failure to impeach witnesses J.R., T.T., and J.W. and Meier's failure to invalidate or discredit the forensic interview. It states these claims are "without evidence" because Stewart's opening motion claims do not show Meier was ineffective; it simply shows Stewart "disagrees with the jury's determination."

15

Given this discussion, we find the district court did not ignore Stewart's original motion, as he claims. And we find Stewart has failed to adequately brief his argument on appeal by not specifying which claims he believes the court abandoned.

Next, we find Stewart did not preserve his argument for appeal because he failed to object below to the district court's findings of fact and conclusions of law. In our *Phillips* decision, we found "a litigant must object to inadequate findings of fact and conclusions of law to give the district court the opportunity to correct them, and in the absence of an objection, omissions in findings will not be considered on appeal." *Phillips*, 2005 WL 2715650, at *3. If there is no objection made, we "will presume the district court found all facts necessary to support its judgment." 2005 WL 2715650, at *3.

A review of the record does not rebut the presumption that the district court found all facts necessary to support its decision. See *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009). The testimony at the evidentiary hearing focused on Stewart's ineffective assistance of counsel claims. In fact, the only witnesses who testified were the two attorneys who had been appointed to represent Stewart in the pretrial proceedings and trial, and they were both questioned about their representation of Stewart. The parties filed written closing arguments, with the State filing its arguments first and Dean filing his on behalf of Stewart a month later. The State addressed each of Stewart's ineffective assistance of counsel claims but argued Stewart had waived his claims of trial court and prosecutor errors for failing to submit any evidence or arguments to support these allegations. Stewart did not respond to the State's assertion that he had waived or abandoned these arguments, nor did he address them in his written closing arguments. Instead, he addressed some of his ineffective assistance of counsel claims and "adopted" the remainder of the claims as stated in Stewart's original motion.

The State candidly admits the district court did not specifically rule on the claims of trial court and prosecutor errors in Stewart's original motion. Yet it correctly points out

16

that Stewart failed to brief or provide evidence to support those claims before the district court. If Stewart had not, in fact, abandoned those claims, then he needed to bring that fact to the district court's attention when it omitted making findings on those claims in its ruling on his 60-1507 motions. Given his lack of objection, we presume the district court found all facts necessary to support its judgment. That is, we presume the district court was correct in omitting rulings on those claims since Stewart had apparently abandoned them.

Last, we find Stewart has failed to brief his arguments on appeal by failing to explain why we—or the district court—should consider his claims of trial court and prosecutor errors. An issue which is not adequately briefed is deemed abandoned. *State v. Holmes*, 278 Kan. 603, 622, 102 P.3d 406 (2004). And a point incidentally raised but not argued is also considered abandoned. *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 40, 59 P.3d 1003 (2002).

As the State notes, Stewart's claims of trial court and prosecutor errors are trial errors. Supreme Court Rule 183(c)(3) (2024 Kan. S. Ct. R. at 240) generally prohibits a K.S.A. 60-1507 motion from be used "as a substitute for direct appeal involving mere trial errors." There is one exception to this rule, which allows a movant to raise trial errors affecting constitutional rights even though that error could have been raised in a direct appeal if "exceptional circumstances excuse the failure to appeal." Supreme Court Rule 183(c)(3) (2024 Kan. S. Ct. R. at 241). Stewart bears the burden of showing the existence of exceptional circumstances. *Moncla v. State*, 285 Kan. 826, 831, 176 P.3d 954 (2008). Stewart did not raise these trial court and prosecutor errors in his direct appeal and has failed to assert any exceptional circumstances which would allow the district court (or us) to consider them now. *Stewart*, 2020 WL 1074710, at *1. We therefore find this deficiency provides another reason he has failed to preserve his claims.

17

CONCLUSION

Stewart has failed to persuade us that the district court erred in denying his ineffective assistance of counsel claims, and he has failed to preserve the rest of the claims he raises on appeal. The district court's findings are supported by substantial competent evidence and we affirm its denial of Stewart's K.S.A. 60-1507 motions.

Affirmed.