NOT DESIGNATED FOR PUBLICATION

No. 121,043

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN WESLEY TOWNER JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL A. RIOS, judge. Opinion filed June 25, 2021.
Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL, J., and MCANANY, S.J.

PER CURIAM: John Towner Jr. was convicted of voluntary manslaughter and attempted intentional second-degree murder. He contends on appeal that he was immune from prosecution and that he acted in defense of another. He also contends the district court abused its discretion in admitting certain exhibits into evidence at trial and denying his requested instruction on the defense of another. Because we are not persuaded by Towner's arguments and find no reversible trial errors, we affirm these convictions.

The events leading to these convictions took place on the morning of January 23, 2018, at the home of John Austin Sr. (John Sr.). His son, John Austin Jr. (John Jr.), was visiting his father that morning. Towner and a man, whom Towner later referred to

1

simply as "Joe," arrived at the house and an altercation ensued which led to Towner shooting both John Sr. and John Jr. John Sr. survived the shooting, but John Jr. later died from his wounds.

Towner was tried for felony murder, second-degree intentional murder, attempted intentional second-degree murder, and attempted aggravated robbery. The jury convicted Towner of the lesser crime of the voluntary manslaughter of John Jr. and the attempted second-degree intentional murder of John Sr. Towner was acquitted on the other charges. After the court denied Towner's motion for a durational departure, the court sentenced him to a prison term of 168 months with 36 months of postrelease supervision.

TOWNER'S CLAIM OF IMMUNITY FROM PROSECUTION

The central issue of this appeal is whether Towner was immune from prosecution. He raised that issue in a pretrial motion, which the district court denied following two days of testimony. While Towner also claims the district court committed trial errors in the admission of certain exhibits and in the court's instructions to the jury, he does not claim the evidence was insufficient to support his convictions. Rather, he claims that (1) the evidence presented at the hearing on his immunity motion was insufficient to justify the district court denying relief, (2) the district court applied the wrong standard in denying the motion, and (3) he never should have been tried for shooting John Sr. and for shooting and killing John Jr.

*The Statutory and Case Authority*

The statutory foundation for Towner's claim of immunity is found in two statutes: K.S.A. 2020 Supp. 21-5222 and K.S.A. 2020 Supp. 21-5231. Under K.S.A. 2020 Supp. 21-5222(a):

2

"A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force."

Under K.S.A. 2020 Supp. 21-5222(b):

"A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person."

Under K.S.A. 2020 Supp. 21-5231(a): "A person who uses force which . . . is justified pursuant to K.S.A. 2020 Supp. 21-5222 . . . is immune from criminal prosecution . . . for the use of such force."

In the face of a claim of immunity from prosecution, "A prosecutor may commence a criminal prosecution upon a determination of probable cause." K.S.A. 2020 Supp. 21-5231(c). Probable cause is determined at a hearing conducted by the district court on the defendant's claim of immunity. The burden of proof is on the State at that hearing. In considering the immunity issue, the district court must consider the totality of the circumstances, weigh the evidence without giving deference to the State, and determine if the State has established probable cause that the defendant's use of force was not statutorily justified. *State v. Macomber*, 309 Kan. 907, 916, 441 P.3d 479 (2019). The State meets its burden if it shows that the evidence produced at the hearing is "sufficient for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of [the] defendant's guilt despite the claim of justified use-of-force immunity." *State v. Phillips*, 312 Kan. 643, Syl. ¶ 3, 479 P.3d 176 (2021).

3

To arrive at a legal conclusion as to whether the State has met this burden, the district court resolves conflicts in the evidence, draws reasonable inferences from the evidence, and makes findings of fact based upon the evidence presented. *State v. Thomas*, 311 Kan. 403, 413, 462 P.3d 149 (2020). On appeal our task is to review the district court's factual findings to determine if substantial competent evidence supports them. We review the district court's legal conclusion de novo. 311 Kan. at 409. Substantial competent evidence is defined as evidence that "'possesses both relevance and substance'" and provides a "'substantial basis in fact from which the issues can reasonably be resolved.'" *Macomber*, 309 Kan. at 916.

*The Evidentiary Hearing on Towner's Motion for Immunity from Prosecution*

- *Testimony of John Sr.*

John Sr. testified at the hearing on Towner's motion. John Sr. lived alone at his home in Topeka. His son, John Jr., visited him every day to help with household chores because John Sr. had been injured in an automobile accident. Less than an hour after John Jr. arrived, Timmie Robinson, a childhood friend of John Sr.'s, arrived for an unexpected visit. Timmie was acting rather weird that morning and would not sit down. John Sr. thought Timmie was setting him up.

About 35 minutes later, there was another knock on the door. When John Sr. answered the door, he was confronted with Towner and another man who was later referred to as Joe. John Sr. did not know either of them but later realized he was acquainted with members of Towner's family. Towner asked if he could come in to use the bathroom. John Sr. said Towner could not come in but rather he should go down the street to McDonalds.

4

Towner then blocked the screen door with his foot and said to John Sr., "'You're gonna let me in.'" Towner then reached for a gun in his pants, but John Sr. grabbed at the gun before Towner could fully pull it out and the two of them fought for control of the gun. All of this happened on the front porch with Joe standing behind Towner. John Sr. could not fight Towner for long because of John Sr.'s injuries. All of a sudden John Sr.'s right hand gave out. At that point he jumped off the porch into the yard, and Towner shot him in the back.

At this point it is important to note that a photo taken of John Sr. in the emergency room after the shooting shows the entry wound in the area of John Sr.'s right hip. This photo was introduced into evidence at Towner's later jury trial but not at the hearing on Towner's claim of immunity. Because Towner claims the district court erred in denying his immunity motion, our review is based upon what evidence was presented at the hearing, and the only evidence before the court at the time of the hearing was John Sr.'s testimony that Towner shot him in the back.

John Sr. did not possess a gun. He later testified, "I just don't believe in guns." After being shot John Sr. fell to the ground. As John Sr. got back on his feet he looked back and saw Towner open the screen door and enter the house. John Jr. had not come to the door; he was still inside the house with Timmie. As John Sr. made his way to a neighbor's house, he heard a gunshot coming from his house.

- *Testimony of Officer Bulmer*

Officer Aaron Bulmer of the Topeka Police Department testified that he was the first to respond to the 911 call about this incident. As he approached the house he saw John Jr. lying face down partially on the porch steps and partially on the ground. John Jr. was badly injured. He had a bullet hole in his chest and a serious injury to his left arm.

There were no weapons around where John Jr. was lying. He rode with John Jr. in the ambulance to the hospital.

- *Testimony of Jermaine Rayton and Latoya Austin*

Jermaine Rayton, a prison inmate at the time of the hearing, and LaToya Austin, the daughter of John Sr. and the sister of John Jr., testified. Rayton knew Towner from federal prison. The court admitted text messages from Rayton to Latoya in which he told her that he had told Towner that robbing people was not the way to go and that Towner was trying to get Rayton to set up some victims for Towner to rob. Rayton told Latoya, "[I] hope he [Towner] get what he got coming."

Towner was charged with attempted aggravated robbery of John Sr., but he was acquitted of this charge at trial.

- *Testimony of Detective Hayden*

Detective Ryan Hayden of the Topeka Police Department testified that he interviewed Towner three days after the shooting. Towner had not turned himself in, and he did not report the shooting to the police after it occurred. Towner initially told Hayden he did not know anything about the incident, had not been in the area at the time of the shooting, and did not own a handgun. Later in the interview, when Hayden confronted Towner with the fact that Towner's cell phone had been found at the scene and surveillance video in the area showed his vehicle was there that day, Towner admitted that he had been there and had shot John Sr. and John Jr.

Towner told Hayden that he met a friend on the street that day, and the friend asked him to drive him to the house of a person that owed him money. Towner refused to identify this friend to Hayden, but Towner refers to this person later in the record simply

6

as Joe. In any event, Towner said that Joe offered him $20 for gas and $20 for Towner's time if he would "go over there with him." Towner had plans that day to take a child to a doctor's appointment after taking Joe to this house. Towner denied going to the house to rob someone.

Towner told Hayden that when they got to the house, Joe went to the door and encountered John Sr. and there followed an argument that turned into a fight which ended up off the porch. While John Sr. and Joe were fighting, John Jr. came to the door. Towner initially claimed John Jr. had a gun with a fiber-optic gun sight. Hayden told Towner that he executed a search warrant on the house after these events and no weapons or firearms of any kind were found in the house. At that point Towner changed his story and said he did not see John Jr. with a gun but saw him make a move to his waistband. At that point Towner said he shot John Jr. He told Hayden "that he thought it was shoot or be shot."

Towner then shot John Sr. who was on the ground fighting with Joe. Towner said it appeared to him that John Sr. was winning the fight. Towner told Hayden he did not see John Sr. with a gun.

- *Testimony of Towner*

Towner testified in support of his motion. According to Towner, on the day of the shootings he planned to take his wife to work, take his children to school, and then look for a job. (Towner had just gotten out of the federal prison in Leavenworth two weeks earlier.) He testified about the $40 offer from Joe, with whom his only contact was that they had been together in juvenile detention for two or three months more than 15 years earlier. Joe was going to John Sr.'s house to pick up some money that he owed Joe.

When they got to John Sr.'s house Towner went with Joe and approached the house. He claimed—contrary to John Sr.'s testimony—that it was Joe who knocked on

7

the door rather than he. According to Towner, John Sr. had a can of beer in his hand when he opened the door. Towner could tell that John Sr. "was high, under the influence of some drugs . . . he was drinking . . . he was wasted." Towner acknowledged that John Sr. did not have a gun when he was at the door. There was a heated conversation between Joe and John Sr. when John Sr. stepped out onto the porch. John Sr. used an "[a]ggressive, like, disrespectful, insulting" tone of voice and "was just, like, kind of like, bullying him."

Towner denied that he or Joe put a foot in the door or that either of them ever tried to enter the house. When Joe tried to say something to John Sr., John Sr. "punched him and tackled him off the porch." Towner was at first "totally shocked, because I didn't expect none of that." He then thought, "I got somewhere to be. I got maybe two minutes to be heading to my daughter's school or I'm going to be late picking up my daughter to get her to the eye doctor's appointment. I ain't got time for this." Towner acknowledged that during all of this John Sr. "never grabbed me, or touched me, or did anything to me. . . . I just wanted to get out of there. I had something else to do."

Towner said that at that point he started to leave when he saw John Jr. running at him with a black gun with a red fiber-optic sight. He claimed that John Jr. "had a gun to [his] head." At that point Towner said he thought, "I'm about to get killed." Towner admitted that John Jr. never fired a shot, but Towner claimed John Jr. kept running at him so Towner drew his gun, a 9 mm Ruger, and shot. (Towner later told Detective Hayden that he did not own a gun.) The first shot ricocheted off the wall. According to Towner, his thinking was "[e]ither shoot or be shot." So Towner fired two more shots at John Jr., who fell to the floor "right inside the house . . . in front of the screen door, on the inside. . . . He never made it outside."

Towner then turned and saw that John Sr. and Joe were still fighting at the bottom of the porch steps. Towner said that John Sr. was on top of Joe and was "[b]eating him up

8

pretty good, real bad." When John Sr. looked back at Towner, Towner said he "could not help but think [John Sr.] was going for a gun too. . . . [So] I shot him, one time. . . . I really just wanted to get out of there before more people came out of the house to kill me." Significantly, Towner shot John Jr. in the back and he admitted that he never saw John Sr. with a gun.

At that point Towner left, picked up his daughter, took her to lunch, and then took her to the eye doctor.

- *Closing Arguments*

Towner's counsel argued that under the totality of the circumstances, Towner acted as a reasonable person would. He was not expecting "anything controversial in any way," and he was not expecting to use a firearm. Counsel then recounted Towner's version of the events, including Towner's position that he did not initiate anything; did not try to enter the house; did nothing illegal; and that his use of force was reasonable under the circumstances, entitling him to immunity from prosecution.

The prosecutor argued that Towner's testimony was not believable. With regard to the claim that John Sr. attacked Joe, jumped off the porch, and continued to attack him, the prosecutor stated:

> "The Court was able to observe Mr. Austin, Sr., was able to observe his physical
> condition. And the evidence was that . . . the physical condition that he had at the time
> this event occurred. He was under the care of his son, Austin, Jr. He was recovering from
> an automobile accident. He had an injury to his hand. He was walking with a cane. He
> had to have assistance with going to the bathroom, with putting on his shoes. He was in
> such a condition that he couldn't even bend over and tie his shoes. But to believe that
> someone who is almost 60 years old, would attack another individual, unprovoked, and
> then take that fight, escalate it off the porch onto the ground, is simply not believable."

The prosecutor pointed out that there is no evidence that there was a gun at John Sr.'s house. No gun was found on or around John Jr. Moreover, John Sr. did not have a gun; he was shot in the back. There is no evidence that Towner acted out of necessity to protect himself or Joe from the use of unlawful force. These events occurred at John Sr.'s home when Towner attempted to force his way inside. The prosecutor argued that Towner did not honestly believe—nor would a reasonable person believe—that Towner was justified in his actions in response to an imminent use of unlawful force against him or Joe. Towner did not stay and render aid to the victims, nor did he contact the police to report this incident. The prosecutor argued Towner was not entitled to immunity from prosecution.

- *The District Court's Ruling*

The district court ruled from the bench. The district court initially discussed K.S.A. 2017 Supp. 21-5222 and stated:

> "[I]t requires first, that the Court find that there is evidence supporting first, a subjective belief on behalf of Mr. Towner, that there was . . . unlawful force which was imminent against Mr. Towner. And so therefore, Mr. Towner necessarily defended himself with force. The Court must also objectively look at this and determine whether or not a reasonable person would have come to the same conclusion that Mr. Towner came to. Whether a reasonable person would believe that unlawful force was—was being directed at him."

With regard to the first element of the immunity test—Towner's subjective belief that unlawful force was being used against him or another and, therefore, he had to shoot—the court concluded, "I don't believe that." But even if Towner held such a belief that his only option was to "shoot or be killed," under the second prong of the test the court did not find Towner's conduct was reasonable "from an objective standard." The

10

court stated that "people who enter a home without permission face the possibility of lawful physical force by a person defending against the trespass, and are not in the same position as an otherwise innocent person."

The court found that Towner's "version of events don't add up to support this self-defense theory." Towner went with a man he had briefly known many years earlier and did not know well. "Towner says he believes it was going to be an easy transaction. Didn't expect any kind of a violent or aggressive transaction. Yet, he went to that house with a gun." When compared to the testimony of John Sr. and "the detectives and other persons who have testified in this hearing," and considering all the evidence (including the evidence that neither John Sr. nor John Jr. possessed a weapon), the court did "not believe that Mr. Towner's evidence is . . . more credible than all of the other evidence . . . in considering whether or not Mr. Towner had a subjective belief . . . that unlawful force was imminent against him.

"[B]ased upon the evidence that was submitted by both parties in this hearing," the court denied Towner's motion for immunity from prosecution.

*Analysis*

On appeal, Towner contends that he reasonably believed he had to use force to protect himself from John Sr. and John Jr. and that the State failed to meet its burden to prove that the force he used was not justified. Towner argues the district court applied the wrong facts to the immunity test and, thus, arrived at a conclusion that was not supported by the evidence.

To be statutorily justified, Towner's conduct had to meet a two-part test, which the district court applied in this case. First, there must be a showing that Towner sincerely and honestly believed it was necessary to use deadly force in order to defend himself.

11

Second, there must be a showing that a reasonable person in Towner's "'circumstances would have perceived the use of deadly force in self-defense as necessary.'" *Macomber*, 309 Kan. at 916-17.

Here, the district court found that the evidence established that Towner's conduct comported with neither of these standards. Both are required for a defendant to invoke the right to statutory immunity from prosecution.

The district court was in the better position to weigh the credibility of the witnesses. We do not revisit on appeal issues of witness credibility. Moreover, the district court could evaluate the physical characteristics of John Sr. in evaluating the conflicting descriptions of the events leading up to the shootings. In considering all the evidence presented, the district court was persuaded by the description of the events presented by the State's witnesses over the version advanced by Towner.

The district court both recognized and applied the correct legal standard to reach its conclusion. See *Phillips*, 312 Kan. at 656; *State v. Dukes*, 59 Kan. App. 2d ___, 481 P.3d 184, 190-91 (2021) (finding district court applied the appropriate legal standard when it found the State failed to show a reasonable person would believe the defendant's use of deadly force was not justified).

Towner criticizes two observations of the district court made in announcing its decision from the bench. Towner's criticisms are predicated on his version of the events, which the district court did not find to be persuasive.

First, the district court noted: "The Austin[s] . . . were in their home. They were in a position to lawfully defend their domicile." Citing K.S.A. 2020 Supp. 21-5224, Towner argues that this statement has nothing to do with the killing of John Jr. because he was a mere visitor in his father's home that day and was not protecting his own domicile.

12

K.S.A. 2020 Supp. 21-5224(a) relates to certain circumstances under which a presumption arises that a person has a reasonable belief that deadly force is necessary to prevent imminent death or great bodily harm. Under subsection (b) of the statute, the presumption does not arise when "(1) [t]he person against whom the force is used *has a right to be in*, or is a lawful resident of, the dwelling." (Emphasis added.) K.S.A. 2020 Supp. 21-5224(b)(1). While the statute does not concern itself with actions of a son in defending the home of his father, it clearly obviates any presumption that Towner reasonably believed that deadly force was necessary.

But this whole issue is a red herring. The fact is the district court found Towner's testimony lacking in credibility. Towner testified that John Jr. came at him with a gun pointed directly at Towner's head. But the more credible John Sr. testified that there were no guns in the house, and Police Officer Bulmer and Detective Hayden testified that no weapons were found at the scene of the crime, including on or around John Jr. There is ample evidence to support the district court's finding that Towner was not justified in using deadly force against John Jr.

Second, the district court observed:

> "Mr. Towner could have walked away at that point. There's–he didn't know 'Joe' very well, he could have walked away. Mr. Towner stayed, even though he knew he was not welcome. He stayed, and Mr. Austin had the legal right to defend himself and his domicile, in his home."

Towner argues that he could not have walked away because of (1) the rapid acceleration of events that day, (2) John Jr. pointing a gun at his head, and (3) Towner's surprise when an expectedly peaceful event turned violent.

13

Though the events developed rapidly, Towner forgets that he instigated them. He is the one who put his foot in John Sr.'s door, told John Sr., "'You're gonna let me in,'" and then reached into his pants for his gun. The only surprise Towner experienced was John Sr.'s failure to acquiesce to a home invasion and probable robbery. As for John Jr., Towner fails to mention that there was, in fact, no gun in John Jr.'s possession when Towner gunned him down.

We find substantial competent evidence to support the district court's finding that Towner did not have the subjective belief that under the totality of the circumstances the use of force was necessary, and that a reasonable person, under the same circumstances, would not have found that force was necessary. The district court properly fulfilled its role as the gatekeeper on the State's ability to prosecute the defendant in the face of a claim of immunity. See *Phillips*, 312 Kan at 655-56. The district court did not err in denying relief on Towner's motion for immunity from prosecution for these crimes.

THE DENIAL OF TOWNER'S REQUESTED JURY INSTRUCTION ON DEFENSE OF ANOTHER

In Instruction No. 9, the court instructed the jury:

"Defendant claims his use of force was permitted as self-defense.

"Defendant is permitted to use against another person physical force that is likely to cause death or great bodily harm only when and to the extent that it appears to him and he reasonably believes such force is necessary to prevent death or great bodily harm to himself from the person's imminent use of unlawful force. Reasonable belief requires both a belief by defendant and the existence of facts that would persuade a reasonable person to that belief.

"When use of force is permitted as self-defense there is no requirement to retreat."

14

Towner requested at the instruction conference that the phrase "or [in] defense of another" be added to this instruction. He relies on K.S.A. 2020 Supp. 21-5222, subparagraph (b) in particular, for support. The statute provides:

> "(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force.
> "(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person." K.S.A. 2020 Supp. 21-5222(a) and (b).

The district court denied Towner's request. Towner claims it was error to do so.

*Standard of Review*

In considering whether the district court erred in failing to give Towner's requested defense of another instruction, we first determine whether the issue was properly preserved for review. Here, it was.

Second, we determine whether the proffered instruction was legally appropriate. Our review is unlimited over this issue.

Third, we determine whether there was sufficient evidence, viewed in the light favoring Towner, that would have supported the giving of this instruction.

Finally, because Towner claims the denial of this instruction deprived him of the defense that he was acting in defense of another when he shot John Sr., if the district court erred in not giving the proffered instruction we determine whether the error was

15

harmless using the constitutional standard set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011); that is, whether we are persuaded beyond a reasonable doubt that the error did not affect the outcome of the trial. See *State v. Keyes*, 312 Kan. 103, 107, 110, 472 P.3d 78 (2020).

*Analysis*

Towner argues that the instruction was legally appropriate because his defense to the State's charge of attempted intentional second-degree murder was that he defended Joe from John Sr. The court in *State v. Barlett*, 308 Kan. 78, 84, 418 P.3d 1253 (2018), concluded that self-defense is a legally appropriate defense theory if the defendant is not "already otherwise committing a forcible felony when he or she commits a separate act of violence." Towner had just shot John Jr., a separate forcible felony. When Towner turned and saw John Sr. in what he claimed was an altercation with Joe and fired at John Sr., Towner was not in the process of otherwise committing a forcible felony. So a defense of another instruction was legally appropriate.

But the issue remains whether Towner's proposed defense of another instruction was also factually appropriate. An instruction is factually appropriate if, viewed in a light favoring the defendant, there was sufficient evidence supporting the instruction. See *State v. Salary*, 301 Kan. 586, 593, 343 P.3d 1165 (2015); *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

We consider both aspects of a defense of another claim to determine if the instruction was factually appropriate. *State v. Qualls*, 309 Kan. 553, 557, 439 P.3d 301 (2019). In doing so, we view the evidence in the light favoring Towner. First, there must be evidence to support a finding that Towner sincerely and honestly believed the use of deadly force in the defense of Joe was necessary. Second, there also must be evidence to support a finding that a reasonable person in Towner's circumstances would have

16

perceived the use of deadly force in defense of Joe was necessary. See *Salary*, 301 Kan. at 593-94.

There is little evidence on Towner arriving at the sincere and honest belief that he needed to shoot John Sr. in order to defend Joe. Towner testified in his direct examination that after he shot John Jr.,

> "I turned like 90 degrees, boom. And I see John Austin, Sr. on top of my friend. Everything happened so quick, they didn't know I just got done shooting [John Jr.]. Like I said, it was—a gunshot happens fast, pow-pow. You will look back and you won't even realize what's going on and that's what happened. When he was on top of my friend, he was punching him out . . . . My friend [is] on his back like trying to like, not get hit in the face and stuff. So, I shot him once."

Moments later, as his direct examination continued, Towner testified that it was John Sr.'s movement of apparently drawing a weapon that caused Towner to shoot in self-defense, not in an effort to defend Joe.

> "So, I just get done firing here. John Austin, Sr. looks back over his shoulder at me like this and starts to do like this. (Witness indicating.) But it was the look in his face and he, kind of like, made a movement towards his hip, so I just—it just came natural—I don't want to say it came natural. Something in me told me shoot.
>
> . . . .
>
> "I just finished shooting [John Jr.]. I turned to leave right about 90-degree[s] away. I noticed what's going on with my friend and Austin, Sr. Austin, Sr., I guess he realizes that I'm shooting into the house or shooting period and notices like—he does like a sharp cut to look at me. Maybe he seen the gun in my hand, maybe he didn't. I'm assuming he did because it's real shiny and chrome. You all seen that. And kinda like, went to get off of [Joe]. But he looked like he was reaching though at the same time, like, he was going for his own gun. And I don't know if he had one or if he didn't, because everything transpired real quick.

17

"Like, just got done shooting this guy with a gun, and now you're reaching for a gun. I got to think that you got a gun too."

What prompted Towner to shoot was his claim that John Sr. appeared to be drawing a gun. Towner did not testify that he thought John Sr. was about to shoot Joe. Rather, the only reasonable conclusion we can draw from Towner's testimony is that he claimed that he shot John Jr. in defense of himself, not in defense of Joe.

Likewise, we do not believe a reasonable person in Towner's circumstances would have perceived that the use of deadly force in defense of Joe was necessary. See *State v. Haygood*, 308 Kan. 1387, 1405-06, 430 P.3d 11 (2018). The evidence was that John Sr.—who Towner claimed was attacking Joe—was an elderly, injury-ridden man who walked with a cane and who (according to Towner) was inebriated. John Sr. did not have a gun when Towner shot him. And, in fact, Towner's real theory, as evidenced by his testimony, was that he shot John Sr. in defense of himself, not in defense of another. Besides, no reasonable person would conclude that Towner was justified in trying to kill one of the claimed combatants in the altercation such as Towner described. There is no evidence that Joe faced imminent death or great bodily harm in the claimed altercation. See *State v. Hernandez*, 253 Kan. 705, 713, 861 P.2d 814 (1993) (holding district court did not err when it declined to include a defense-of-another instruction because facts did not show defendant's sister was in imminent danger). Accordingly, an instruction on the defense of another was not factually appropriate.

Turning to the third step in the analysis, any error in not giving a defense-of-another instruction would have been harmless. There was no reasonable probability, in light of the entire record of the trial, that a jury instruction given in the form Towner requested would have affected the outcome of the trial. *Ward*, 292 Kan. at 565. Without recounting all of that testimony, we are satisfied that if there had been any error not

18

giving Towner's proposed instruction, it would not require reversal. See generally *State v. Killings*, 301 Kan. 214, 223, 340 P.3d 1186 (2015).

The same can be said for Towner's argument that the jurors would have returned a different verdict because they found him guilty of voluntary manslaughter of John Jr. based on an imperfect defense but found him guilty of attempted second-degree murder for shooting John Sr.

The State did not meet its burden to prove attempted aggravated robbery. Thus, Towner did not kill John Jr. while attempting to commit aggravated robbery. As a result, the State could not prove that Towner was guilty of felony murder. The State also failed to prove Towner intentionally killed John Jr. but found Towner guilty of the lesser included offense of voluntary manslaughter. To find Towner guilty of voluntary manslaughter, the State had to prove Towner knowingly killed John Jr. on an unreasonable but honest belief that circumstances existed that justified deadly force in defense of a person.

Towner's unreasonable but honest belief that shooting John Jr. was justified to defend himself has nothing to do with the State's evidence showing Towner attempted to intentionally kill John Sr. The State presented substantial evidence supporting that conviction. There is no reasonable probability that the district court's failure to include the defense-of-another language in the jury instruction affected the verdict.

THE ADMISSION OF VARIOUS PHOTOS AT TRIAL

Towner challenges the district court's decision to admit into evidence photos of (1) John Jr.'s bloody clothing, (2) various shell casings, (3) bullets found at the scene and recovered from John Jr.'s clothing, and (4) Towner's gun and the magazine found with it.

19

He argues on appeal that these photos were irrelevant, immaterial, and cumulative, and that their admission was unfairly prejudicial to him.

*Standard of Review*

All relevant evidence is admissible unless it is prohibited by statute, constitutional provision, or court decision. See K.S.A. 60-407(f).

Evidence is relevant if it is both material and probative. Evidence is material when the fact it supports is in dispute, and it is probative if it has any tendency to prove any material fact. See *State v. Miller*, 308 Kan. 1119, 1167, 427 P.3d 907 (2018). As stated in *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016), "'Evidence is probative if it furnishes, establishes, or contributes toward proof.'" We review de novo whether evidence is material. We review for any abuse of discretion a ruling on whether proffered evidence is probative. *Miller*, 308 Kan. at 1166.

Evidence may be relevant but unduly prejudicial. The district court in its discretion may exclude evidence that is relevant if the court finds its probative value is outweighed by its prejudicial effect. K.S.A. 60-445. As stated in *State v. Thurber*, 308 Kan. 140, 202, 420 P.3d 389 (2018): "[N]early all evidence the State presents in a criminal case will be prejudicial against a defendant, so the proper inquiry is whether the risk of unfair or undue prejudice substantially outweighed the evidence's probative value." This determination is reviewed for any abuse of discretion. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). Towner bears the burden of showing that the district court abused its discretion in admitting such evidence. See *State v. Tague*, 296 Kan. 993, 1002, 298 P.3d 273 (2013).

Even though evidence is relevant evidence and not unduly prejudicial, it may be challenged as being cumulative. Cumulative evidence is not automatically required to be

excluded from a trial. It is a matter of judicial discretion to determine if cumulative evidence should be excluded. *State v. Dupree*, 304 Kan. 43, 65, 371 P.3d 862 (2016). The failure to exclude cumulative evidence is error only if the district court abused its discretion in refusing to exclude it. As stated in *Dupree*, 304 Kan. at 65, "Rarely has this court found an abuse of discretion in the admission of photographic evidence in a murder trial."

Finally, we review further to determine if any error was harmless. Here, on appeal Towner invokes the nonconstitutional review standard by arguing in his brief that the State must show that there was no reasonable probability that the admission of this evidence contributed to the verdict. See *Ward*, 292 Kan. at 565.

*Analysis*

Towner's overarching argument is that these exhibits were improperly admitted because, while all of them do establish events related to the shootings, there was no dispute that Towner shot John Sr. and John Jr. Thus, these exhibits do not tend to prove a material issue in the case. Moreover, he asserts that the photos were cumulative and unduly prejudicial.

- *Relevance*

With respect to Towner's claim that he had already admitted being the shooter, our Supreme Court stated in *State v. Lee*, 266 Kan. 804, 815, 977 P.2d 263 (1999): "We acknowledge that the State has the right and, in fact the duty, to establish the elements of the crime charged. The State also has an interest in presenting its case in its own way by telling the story as the State wishes." As stated in *State v. Johnson*, 216 Kan. 445, 448, 532 P.2d 1325 (1975): "It is an established rule of law that an admission by a defendant does not prevent the State from presenting separate and independent proof of the fact

21

admitted." For example, in *State v. Clark*, 261 Kan. 460, 477, 931 P.2d 664 (1997), the court noted:

> "Even where the defendant concedes the cause of death, the prosecution has the burden to prove all the elements of the crime charged and photographs to prove the elements of the crime, including the fact and manner of death and the violent nature of the crime, are relevant and admissible. [Citations omitted.]"

Moreover, photos showing the "'extent, nature, and number of wounds inflicted are generally relevant in a murder case.'" *State v. Burnett*, 293 Kan. 840, 853, 270 P.3d 1115 (2012) (quoting *State v. Parker*, 277 Kan. 838, 847, 89 P.3d 622 [2004]); see *State v. Foster*, 229 Kan. 362, 367, 623 P.2d 1360 (1981) (holding photos of deceased victim showing bruising were relevant to explain cause of death). Here, we conclude the photos of John Jr.'s bloody clothing were relevant.

The State maintains that the photos of the gun were relevant to support the State's theory that Towner did not act in self-defense because they show his gun and show that Towner hid the gun under a mattress after the shooting. The State also argues that the photos of the shell casings and bullets were linked to Towner's gun, so they were relevant to prove Towner used the gun in the shooting.

The district court did not abuse its discretion when it admitted the photos of Towner's gun, which was the gun used by Towner to shoot John Sr. and John Jr. Because the photos also tended to prove the elements of the charged crimes, the photos of the gun were material and probative, and the district court did not err when it ruled the evidence was relevant. See *State v. Scott-Herring*, 284 Kan. 172, 176-77, 159 P.3d 1028 (2007) (holding that a photo of defendant holding a similar gun to the one used in the crime was relevant).

Similarly, the photos of the bullets and shell casings were relevant. Towner admitted to carrying a gun and testified as to how many rounds he carried that day. John Sr. testified that he recalled hearing two shots as he ran away and was hit once. He recalled hearing several more shots while Towner and Joe were inside John Sr.'s house. Robinson testified that he heard four shots, and Towner testified that he fired three shots at John Jr. and one at John Sr. Because the testimony conflicted as to how many shots Towner fired and where he fired the shots, the evidence was relevant. Our standard or review on the admission of this evidence is the abuse of discretion standard. See *State v. Boysaw*, 309 Kan. 526, 539, 439 P.3d 909 (2019). The district court did not abuse its discretion when it admitted this evidence because a reasonable person would find that the photos of the shell casings and the bullets were relevant.

- *Undue Prejudice*

Photos showing a victim's gunshot wounds are not automatically excluded as being too prejudicial. See *State v. Williams*, 308 Kan. 1320, 1334, 429 P.3d 201 (2018) (holding district court did not abuse its discretion when it admitted photos of gunshot wounds). We have examined the photos of John Jr.'s clothing. They show blood stains and bullet holes. But they are not so gory as to be calculated to inflame the passions of the jurors. The photos showed the nature and extent of John Jr.'s injuries. They were certainly not as graphic as the photos of John Sr. in the emergency room or the photos of John Jr.'s body at the autopsy, none of which is challenged here on appeal. See *State v. Salem*, 230 Kan. 341, 347, 634 P.2d 1109 (1981) (holding admission of photos depicting bloodstained pillow and sheets were relevant to cause and manner of death and were not unfairly prejudicial). We conclude that the probative value of the photos of John Jr.'s clothing outweighed any possible prejudicial effect.

With respect to the photos of the shell casings, bullets, and Towner's gun, the district court did not err in admitting them into evidence over Towner's claim of undue

prejudice. See *State v. Francis*, 282 Kan. 120, 136, 145 P.3d 48 (2006) (holding admission of gun found at defendant's house possibly used by defendant to commit murder was not unfairly prejudicial because it was not designed to elicit an emotional response from jury). The photos were of the shell casing found at John Sr.'s house and the projectile found in John Sr.'s kitchen, as well as Towner's gun which was found under his mattress. Introduction of this evidence was not calculated to appeal to the jurors' emotions. The photos were not designed to elicit, nor would they have generated, undue prejudice from the jurors. A reasonable judicial officer would adopt the ruling that the district court did here.

- *Cumulative*

At trial, Towner objected to photos of shell casings and bullets found at the scene as being cumulative. We are not persuaded by Towner's argument on appeal that the admitted photos were cumulative. The Kansas Supreme Court defined cumulative evidence as evidence of the same kind to the same point, which is determined based on its "'kind and character.'" *State v. Meggerson*, 312 Kan. 238, 257, 474 P.3d 761 (2020) (quoting *State v. Dupree*, 304 Kan. 43, 65, 371 P.3d 862 [2016]). Besides, cumulative evidence is not in and of itself objectionable. The trial court has the discretion to admit or exclude cumulative evidence. *Meggerson*, 312 Kan. at 257. A challenge that evidence is cumulative must be based on the evidence being so repetitive and unnecessary that it is at the point of becoming unduly prejudicial. *State v. Hickles*, 261 Kan. 74, 85, 929 P.2d 141 (1996).

The photos of the shell casings added useful context for the jury by showing where the officers found them. The several pictures of the bullets were not repetitive and unnecessary because they depict different aspects of the bullets, such as their identifying characteristics and markings and the locations where they were found.

24

Here, the State admitted the physical gun used by Towner and several photos of the same gun which was found under Towner's mattress. Appellate courts rarely find an abuse of discretion in the admission of photographic evidence in a murder trial. Moreover, these photos of Towner's gun showed different aspects of the gun which the officers found under a mattress. See *State v. Rodriguez*, 295 Kan. 1146, 1158, 289 P.3d 85 (2012) (finding no abuse of discretion for admitting four photos of a victim's autopsy because each provided additional context the others did not and showed injuries at different angles). The photos of the gun provided additional context that the physical gun would not provide. The district court did not abuse its discretion when it found these photos were not cumulative.

- *Harmless Error*

The State argues that if there was any error in the admission of this photographic evidence, then it was harmless and asks us to affirm Towner's convictions. Towner argues that the errors were not harmless because the evidence garnered sympathy for the victims and prejudiced his defense. He asks the panel to reverse and order a new trial.

When an error implicates a statutory but not federal constitutional right, to be deemed harmless the party benefiting from the error must persuade the court that there is no reasonable probability that the error affected the trial's outcome in light of the entire record. *State v. McCullough*, 293 Kan. 970, 981, 270 P.3d 1142 (2012). Here, the burden to prove harmlessness falls on the State. *State v. Brown*, 298 Kan. 1040, 1051, 318 P.3d 1005 (2014).

Towner concedes in his appellate brief that his constitutional rights were not implicated by the evidence, so the harmless error standard in K.S.A. 2020 Supp. 60-261 applies. Towner states: "As the present issue alleges that the District Court erroneously

admitted irrelevant and prejudicially cumulative evidence, the State must show that there is no reasonable probability that the error affected the outcome of Mr. Towner's trial."

As determined in *State v. Gilliland*, 294 Kan. 519, 542, 276 P.3d 165 (2012), issues relating to the application of a rule of evidence and not a complete denial of a defense warrant application of the harmless error standard. Courts disregard all errors that do not affect a party's substantial rights. *State v. Anderson*, 308 Kan. 1251, 1258, 427 P.3d 847 (2018).

Towner does not contend that the evidence was insufficient to support his convictions. His contention is that had the State not repeatedly focused on the photos of John Jr.'s bloody clothing and the instrumentalities of these crimes, the jury would have been swayed by his claim of self-defense.

Our examination of the record fails to disclose any significant focus on these photo exhibits compared to the State's attention to the other evidence in the case. For example, in the State's closing argument and rebuttal the prosecutor made no reference whatsoever to these exhibits. In the face of the testimony of the State's witnesses, the many inconsistencies in Towner's testimony, the fact that Towner did not actually see either victim with a weapon, and the evidence that negated the notion that either victim possessed or was carrying a weapon, we are satisfied that there was no reasonable probability that admission of these photos swayed the jury in deciding whether Towner acted in self-defense. We are satisfied that any claimed error in the admission of these exhibits was harmless, and there is no reasonable probability that their admission affected the outcome of the trial.

Affirmed.